No. 13716

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

BOZ-LEW BUILDERS, a Montana
Limited Partnership,

Plaintiff and Respondent,

-vs-

WILBUR SMITH and ROGER SMITH,

Defendants and Appellants.

---

Appeal from: District Court of the Eighteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of record:

For Appellants:

Bolinger and Wellcome, Bozeman, Montana
H. A. Bollinger argued, Bozeman, Montana

For Respondent:

J. David Penwell argued, Bozeman, Montana

---

Submitted: September 16, 1977

Decided: NOV 16 1977

Filed: NOV 16 1977

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendants appeal from a judgment of the District Court imposing a continuing injunction prohibiting defendants from entering upon or interfering with the peaceable possession of plaintiff's property and from the District Court's subsequent order releasing the security which plaintiff had posted upon its application for a temporary restraining order.

Plaintiff, Boz-Lew Builders, is a Montana limited partnership with Ira Bakken registered as its general partner. In September, 1975, plaintiff purchased several lots on the west side of South 20th Street in Bozeman, Montana. That fall Bakken built a four-plex apartment on the lots. In the early 1970's the area where South 20th Street is now located was farmland. At the time plaintiff purchased its property, this area was still developing into a residential neighborhood.

The defendants, Wilbur and Roger Smith, are father and son who own a 46 acre tract of farmland situated between Highway 191 and Durston Road. Prior to this action they irrigated their farmland with water channeled through a system of ditches extending from the West Fork of the Gallatin River to their farmland. Their rights to water from the West Fork extend back to 1866, although they have personally used this water and ditch system on and off only since 1930.

The Smiths' ditch system begins at the West Fork through a diversion of water into the Farmers Canal. Although the record does not reveal the exact route which the Farmers Canal takes, it eventually runs parallel to the east side of defendants' farmland, heading in a southerly direction. When it reaches West College Street, it turns and runs due west passing some 300 yards south of plaintiff's property. At that point, a headgate regulates water flow into the Carroll Ditch (also known as the Kirk Ditch).

From the headgate Carroll Ditch runs northerly along South 20th Street, crosses diagonally across what is now plaintiff's property, and then heads northerly again. It passes through culverts underneath West Babcock Street and Highway 191, and finally reaches defendants' farmland.

In April, 1974, nearly a year and one-half before plaintiff bought the lots in question, Bakken inspected this area and discovered that the Carroll Ditch ran diagonally across the lots plaintiff later purchased. He found out that the water flowing in the ditch was used by Smiths to irrigate. In his testimony, he admitted that the ditch was open and visible.

At the close of the 1975 irrigation season, Bakken filled in the Carroll Ditch where it crossed his property and constructed an apartment building over the ditch bed. In so doing, Bakken acted on the advice of his attorney who advised him that because his title insurance policy made no mention of an easement for a ditch right across the property and because Bakken could not find any record of one on file with the county clerk and recorder, no ditch easement existed.

In the spring of 1976, Smiths planted a hay crop on their farmland. When irrigation season approached, Smiths requested Bakken to open up the Carroll Ditch where he had filled it in so they could run water through the ditch to irrigate their farmland. Again, acting on the advice of his attorney, Bakken refused to open up the ditch unless Smiths could show him something in writing giving them an easement across his property. As Smiths, who claimed an easement by prescription, could not furnish the requested writing, Bakken did not open up the ditch.

In mid-July, 1976, Smiths, who were in desperate need of water to irrigate their hay crop, again approached Bakken about opening the ditch. This time they gave Bakken an ultimatum to open the ditch that afternoon or they would open it themselves.

On July 27, 1976, Bakken obtained a temporary restraining order prohibiting defendants from entering upon plaintiff's property or from interfering with plaintiff's peaceable possession of its property. Because defendants were thus prohibited from using the Carroll Ditch to flood irrigate their hay field, they authorized George Kingma, their lessee who farmed this land, to rent a sprinkler system. Kingma rented the system for the remainder of the 1976 irrigation season and sprinkler irrigated the farmland by pumping water from Spring Creek, a ditch that ran along the western boundary of defendants' farmland. The total cost to defendants of sprinkler irrigating was $940.93.

In addition to the temporary restraining order, plaintiff obtained an order to show cause why a permanent injunction should not issue. Defendants answered plaintiff's complaint and counterclaimed for damages resulting from plaintiff's depriving them of the use of their ditch easement. They prayed that plaintiff's complaint be dismissed, that the temporary restraining order be dissolved, that plaintiff be ordered not to interfere with the defendants' cleaning and using the ditch, and that they be awarded damages, costs and a reasonable attorney fee.

Following the show cause hearing, the trial judge and the parties viewed the whole length of the ditch in dispute. The court then entered findings of fact, conclusions of law and judgment, declaring that defendants owned a ditch right by prescription across plaintiff's property but prohibiting them from using the ditch " * * * unless an ex parte hearing is held before this Court on notice to the parties to allow the Court to determine the pressing needs of the defendants to use the ditch easement in question to convey their water to the irrigable portions of their ranch." The court also continued the injunction previously issued until defendants made the required showing. Defendants appealed.

On December 2, 1976, plaintiff filed an ex parte motion requesting release of the certificates of deposit it had filed as security upon issuance of the temporary restraining order. The following day the District Court ordered the certificates released.

Defendants raise the following issues on appeal:

1. Did the trial court err in not dismissing the temporary restraining order?

2. Did the trial court err in conditioning defendants' use of the ditch upon a showing in a separate hearing that their use of the ditch was necessary and that no other means existed for the conveyance of water to defendants' property than this ditch?

3. Did the trial court err in not ordering plaintiff to permit defendants to re-establish their irrigation ditch and to use it without interference by plaintiff?

4. Did the trial court err in not awarding defendants damages in the sum of $940.93 for the cost of renting a sprinkler system during the 1976 season?

5. Did the trial court err in releasing the security which plaintiff had posted upon issuance of the temporary restraining order?

In an appeal in an equity case, the Supreme Court will review both questions of law and questions of fact. This Court, however, will not reverse a trial court in an equity case on questions of fact unless there is a decided preponderance of the evidence against the findings of the trial court. Barrett v. Zenisek, 132 Mont. 229, 315 P.2d 1001 (1957).

In the present case the District Court based its conclusions of law and judgment upon findings of fact that it did not and could not make under the testimony presented. Although the

District Court held that defendants owned a valid ditch right across plaintiff's property, it concluded that the relief sought by defendants would not result in a substantial benefit to them. Instead, the District Court concluded that plaintiff would be unreasonably burdened if it was compelled to reconstruct the ditch in its original place by removing or rebuilding its apartment building elsewhere on the premises. The District Court also concluded that defendants did not suffer any damage "either in the use of or application of their conceded water right because of the invasion of their ditch easement by the plaintiff."

The basis of the District Court's conclusions is found in its "Memorandum" accompanying its "Findings of Fact and Conclusions of Law". The District Court stated:

> "As a Court of Equity it is clear to this Court that at this time and this moment in this litigation the defendants, Smiths are still able to convey their clear right of 200 inches of water by other means than the ditch in issue to their lands and for the agricultural uses contemplated by them. * * *"

It is not so clear to this Court what other means defendants could use that would not result in damage to them.

Two ditches run parallel to the east and west sides of the defendants' farmland; to the east is the Farmers Canal; to the west is a ditch known as Spring Creek. The topography of defendants' farmland is rolling land with high and low points. Both the Farmers Canal and Spring Creek are in low swampy areas, but the Carroll Ditch runs through defendants' property at its highest point making that ditch optimal for flood irrigating. Although defendant Roger Smith testified that he did divert water from the Carroll Ditch near its headgate on the Farmers Canal to Spring Creek on two different occasions in the late 1960's, he claimed that the only ditch from which he could flood irrigate his acreage was the Carroll Ditch.

- 6 -

The means Smith used to divert water from the Carroll Ditch to Spring Creek was a lateral ditch running just north of the Farmers Canal and connecting the Carroll Ditch to Spring Creek. This ditch had been dug to help drain a swampy area around a sewer line leading to the nearby Presbyterian Church. Smith, however, claimed no "right" to use the lateral ditch or Spring Creek to transport water to his farmland.

Prior to Bakken's filling in the Carroll Ditch where it crossed plaintiff's property, defendants flood irrigated their hay field using water from the Carroll Ditch. No testimony was introduced as to what this method of irrigation cost defendants but presumably it was minimal. The transcript reveals that the alternative methods of irrigation now available to defendants are: (1) to irrigate by a sprinkler system, pumping water from one of the ditches directly bordering defendants' farmland, or (2) to divert water from the Carroll Ditch through the lateral ditch to Spring Creek, taking water from Spring Creek as it flows by the west side of defendants' farmland. The first alternative involved a cost to defendants of $940.93 for renting a sprinkler system for the 1976 season. Continuing this method of irrigation would presumably impose a burden on defendants of either renting a sprinkler system each season or buying one. The second alternative also poses problems. The lateral ditch crosses land neither owned by defendants nor across which they have a ditch easement. Thus, they are not assured of a right to use that ditch. Additionally, as previously mentioned, Roger Smith testified it is impossible to flood irrigate his property from any ditch but the Carroll ditch.

The alternative to plaintiff's reconstructing the Carroll Ditch where it originally crossed its property is to have it relocate the ditch elsewhere on its property. Bakken testified that he may lose some parking spaces required by local building codes

- 7 -

if the ditch is relocated, but the ditch could be put underground.

As demonstrated, the District Court's conclusions of law and judgment are not supported by the record. The "alternative means" available to defendants to irrigate their land are to sprinkler irrigate at a greatly increased cost to them or to use a ditch which they have no "right" to use.

The court's function in a case of this type is to balance the hardships and the equities between the parties. Dobbs on Remedies, §5.6, p. 355 (1973). We think it inequitable to burden defendants with finding an alternative means to irrigate their property when it is the plaintiff who has interfered with defendants' use of their easement. Plaintiff must find an alternative means of getting the Carroll Ditch water around its property.

In addition to seeking to dissolve the temporary restraining order, defendants counterclaimed for damages resulting from its issuance. The owner of an easement may bring an action for damages for any interference with the privileges of use included in the easement. Section 17-201, R.C.M. 1947.

> "The action is to permit the possessor of the
> easement to vindicate his right and prevent
> the wrongdoer from acquiring a prescriptive
> right * * *." 3 Powell on Real Property,
> ¶420, p. 526.13.

The measure of damages recoverable is the amount which will compensate for all detriment proximately caused thereby, whether or not it could have been anticipated. Section 17-401, R.C.M. 1947. The owner of the easement may at a minimum receive nominal damages; if he proves actual damages, further recovery may be had. 3 Powell on Real Property, ¶420, p. 526.13.

We find the appropriate measure of damages in this case to be the cost to defendants of renting and operating the sprinkler system for the 1976 season--$940.93.

In light of our decision on the foregoing issues, we find it unnecessary to discuss whether the trial court erred in releasing the security plaintiff had posted upon its securing the temporary restraining order.

Finally, defendants in their brief have requested an award of attorney fees on appeal. In the District Court defendants prayed for attorney fees in their action to remove the injunction and were awarded $500. We find that such an award is proper. Sheridan County Electric Co-op, Inc. v. Ferguson, 124 Mont. 543, 227 P.2d 597 (1951); McDermott v. American Bonding Co., 56 Mont. 1, 179 P. 828, (1919). Consequently, we award $750 to defendants for their attorney fees on appeal.

The District Court's judgment is vacated and the cause is remanded to the District Court for further proceedings consistent with this opinion.

_____
                              Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices