No. 83-348

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

GILBERT H. CATE, and MAXINE CATE,
husband and wife, ROBERT L. CONNELL;
SIDNEY M. GOODRICH & MILDRED GOODRICH,
et al.,

                    Plaintiffs and Appellants,

    -vs-

C. LEO HARGRAVE, and ELLEN HARGRAVE,
his wife,

                    Defendants and Respondents.

APPEAL FROM: District Court of the Eleventh Judicial District,
              In and for the County of Flathead,
              The Honorable James M. Salansky, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Patrick M. Springer, Kalispell, Montana

    For Respondents:

        Murphy, Robinson, Heckathorn & Phillips; Dana L.
        Christensen, Kalispell, Montana

                  Submitted on Briefs: January 19, 1984

                        Decided: April 19, 1984

Filed: APR 19 1984

*Ethel M. Harrison*

_____
                  Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

This action was initiated September 22, 1981, in the Flathead County District Court. Plaintiffs, owners of property surrounding McGregor Lake, sought a judicial determination of the extent of defendants' senior water right on the outlet stream of the lake, McGregor Creek. Plaintiffs specifically sought a determination of whether defendants were wasting water by their failure to maintain a dam on the outlet of the lake and whether defendants were exceeding their lawful appropriation in amount or place of use. Defendants counterclaimed alleging plaintiffs damaged their dam and headgate. From a judgment in favor of defendants, plaintiff property owners appeal.

The defendants are successors in interest and owners of two valid appropriations of water, one dated June 27, 1919, and the other dated October 13, 1924. These appropriations total thirteen cubic feet of water per second which is diverted from McGregor Creek several miles below the outlet of McGregor Lake. At the outlet the defendants' predecessor in interest constructed in the early 1900's a dam and headgate. The structure is located on land leased by defendants and is designed to regulate the flow from the lake into the creek. The structure has the potential to affect the water level of McGregor Lake. The dam and headgate have not been maintained by defendants for several years and there is leakage around the structure.

Since 1968, when they purchased their ranch, defendants have been putting to beneficial use up to thirteen cubic feet of water per second. Their use varies with the season, their needs, and climatic conditions. Plaintiffs have valid water

rights for domestic purposes but all are later in time than defendants' existing rights. Plaintiffs desire that the level of the McGregor Lake be kept as high as possible for consumptive, aesthetic and recreational purposes. It is their contention that defendants have a responsibility to maintain the dam at the outlet of McGregor Lake and close the headgate in the dam in the fall when they are not irrigating.

At trial both parties filed motions for partial summary judgment which were denied preceding the trial on October 25, 1982. The District Court bifurcated the cause, left certain equitable matters to the court and factual matters to the jury. After a three-day trial the jury found for defendants on the issue of whether defendants' senior right was being properly exercised and that defendants incurred damage through plaintiffs' interference with their headgate. The court accepted the special verdict of the jury and awarded defendants court costs and attorney fees as a measure of their damages on the successful counterclaim. From this judgment, plaintiffs appeal and defendants cross-appeal alleging damages beyond those recognized by the District Court.

We have framed the issues raised by plaintiffs, appellants hereinafter, as follows:

1. Did the District Court err when it denied appellants' motion for partial summary judgment and not determine as a matter of law the complete extent of defendants' water right?

2. Were the conclusions of law of the District Court contrary to the facts and evidence?

3. Was the award of attorney fees an inappropriate measure of damages?

4. Are the defendants entitled to additional damages for crop loss and decreased cattle production?

I

Appellants claim that their cause was prejudiced when the trial court failed to reach the questions of the exact extent of defendants' water right, whether defendants could change the area of beneficial use, whether the concept of beneficial use restricted the season of use, and whether the defendants had a duty to maintain the dam. Appellants claim that these questions had to be answered prior to the questions answered by the jury in the special verdict. Absent the court's ruling on these issues presented in the motion for summary judgment, appellants argue they were denied a fair determination of the factual issues.

Appellants correctly recognize that a motion for summary judgment under Rule 56(c), M.R.Civ.P., is properly granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 637 P.2d 509. In denying the parties' motions for partial summary judgment the District Court recognized that there were outstanding questions of fact concerning the Hargraves' (defendants below) water right. Given the fact that at this point in the proceeding, there was conflicting evidence as to how much water the Hargraves were putting to a beneficial use, the amount of acreage irrigated, and other factors that would affect the court's determination of the existing water right, we find no error in the decision denying the motion for partial summary judgment. Appellants simply failed to sustain their burden of establishing the absence of any genuine

issue of material fact. Pretty on Top v. City of Hardin (1979), 182 Mont. 311, 315, 597 P.2d 58, 60.

Appellants' argument that the denial of the motion for partial summary judgment prevented a "fair determination of all factual issues" is logically inconsistent. The motion was denied precisely because there were outstanding issues of fact. These factual issues of primary interest to appellants were addressed by the jury after hearing the testimony and receiving the evidence.

The special verdict form that was submitted and returned by the jury read essentially as follows:

> (1) Are defendants using in excess of their valid appropriation of water? Answer: No.
>
> (2) Are defendants failing to properly maintain the headgate at the west end of McGregor Lake? Answer: Yes.
>
> (3) Is this failure resulting in a waste of water? Answer: No.
>
> (4) Was there any damage to plaintiffs' water systems, aesthetic or recreational use of the lake as a result of defendants' using in excess of their appropriation or wasting the same? Answer: No.
>
> (5) Did plaintiffs damage the headgate? Answer: Yes.
>
> (6) If so, which of the plaintiffs caused the damage? Answer: Francis and Alice Shepard.

Counsel for both parties stipulated on day one of the trial that the above questions comprised the issues to be decided at trial. The fact that the jury reached conclusions contrary to those proposed by appellants does not render the determination either incomplete or unfair.

II

5

As a preliminary matter to discussing appellants' second issue, we note the circumstances surrounding the initiation of this lawsuit.

An abnormally dry and cold winter in 1979 caused the level of McGregor Lake to drop to an unusually low level. The cold weather and lack of an insulating water depth resulted in problems with appellants' water systems; intake pipes laid on the bottom of the lake froze. At this point, appellants began to research the Hargraves' water rights and discovered the downstream right was prior in time. While appellants may not have had actual notice of the senior rights when they purchased their parcels on the lake, as junior appropriators they took their rights with constructive notice of the conditions existing at the time of their appropriations. Quigley v. McIntosh (1940), 110 Mont. 495, 505, 103 P.2d 1067, 1072. This basic principle of western water law and the law of Montana controls much of our decision today. See also, State ex rel. Crowley v. District Court (1939), 108 Mont. 89, 88 P.2d 23; Oliver v. Skinner (1951), 190 Or. 423, 226 P.2d 507.

Appellants object to the trial court's conclusion of law that all issues raised by the complaint and pretrial order were determined. The court indicated that further details delineating their water rights should be addressed by the Water Courts.

Appellants object to the judgment because it did not address the question of whether Hargraves' water use could be restricted to their seasonal needs for irrigation. As it now stands, water flows uninterrupted all year over the headgate of the dam on McGregor Lake.

Generally, there is no division of the year into an irrigation season and a storage season, so as to give later direct users a seasonal preference over earlier reservoirs or vice versa. See, People ex rel. Park Reservoir Co. v. Hinderlider (1936), 98 Colo. 505, 57 P.2d 894; Trelease, Water Law, 3rd ed. at 106-107 (1979).

There have been instances where Montana courts have restricted an appropriator to a certain amount of water to be applied during certain times of the year. An appropriator in Smith v. Duff (1909), 39 Mont. 382, 102 P. 981, who changed his use to irrigation was restricted to using the water in the spring and fall, which is when the water was used in a prior mining operation. Similarly, in Galiger v. McNulty (1927), 80 Mont. 339, 260 P. 401, the defendant was restricted to a certain amount of use from May to November in accordance with a pattern established by his original use in mining. In both instances, the Court looked to an established prior pattern of use differing from the present use. Appellants have presented no evidence of a former pattern of use differing from what the Hargraves are using now, were using during the problem year of 1979, or presumably will be using in the future. The District Court cannot be faulted for not reaching the question of seasonal use, particularly when issues stipulated by counsel to be determined at trial did not specify such.

In 1940 this Court in Quigley v. McIntosh (1940), 110 Mont. 495, 103 P.2d 1067, was presented with a factual situation where senior appropriators of Three Mile Creek, an adjudicated stream in Powell County, began to use a greater amount of water from the creek than a 1913 decree allowed. The prior decree only addressed the acreage of land the

7

senior appropriators could irrigate and the flow rate that could be applied. In this respect, the case is analogous to the case at bar. When the appropriator diverted water to new acreage, a fish pond allegedly used as a swimming hole, the trial court found the junior users upstream to be injured. This Court affirmed, noting that while the 1913 decree did not specify days that water could be taken or a total volume of water, this could not be interpreted as a right to an absolutely uninterrupted flow. Such interpretation would be erroneous as it would sanction the senior appropriator's expanded use to the detriment of subsequent appropriators and beyond what could be beneficially applied. Quigley v. McIntosh, 110 Mont. at 510, 103 P.2d at 174.

We concur with the broad holding of Quigley that a District Court may in certain instances "fill in" a pre-1973 water decree with further delineations such as the time or season of use and acreage of application. See Stone, Montana Water Law for the 1980s, at 61 (1981). But we would limit such judicial interpretation of decrees to situations similar to that addressed by the Quigley Court: where the appropriator has either expanded his appropriation, exceeded what can be benefically used or damaged junior appropriators.

Appellants' reliance on Quigley cannot be supported as the trial court found the Hargraves were not using water in excess of their appropriation, were not wasting such water and appellants were not damaged.

Appellants have alleged that the Hargraves added acreage to land originally irrigated under their 1919 and 1924 apropriative rights. The Hargraves' predecessor in interest did begin in 1941 to irrigate eighty acres of land in the middle of the existing irrigated acreage. These lands were

8

not previously irrigated. However, from this Court's 1897 decision in Murray v. Tingley (1897), 20 Mont. 260, 50 P. 723, until the 1973 Water Use Act, a party in Montana could acquire a right on an unadjudicated stream by putting the water to a beneficial use. Musselshell Valley Co. v. Cooley (1929), 86 Mont. 276, 283 P. 213. By the limitation of the Montana law in effect in 1941, a change in place of use was possible only if other claimants were not injured. Appellants are precluded from claiming they were adversely affected by the addition of the eighty acres in 1941 by the simple fact that they held no rights to the waters of McGregor Lake or McGregor Creek at that time.

We will not impose upon a downstream senior appropriator an affirmative duty to maintain a dam and headgate for the benefit of upstream junior water users. If there had been a finding that operation of the dam injured appellants' interests, our decision might be otherwise.

Appellants' additional objection to the trial court's conclusions of law concerned the finding that appellants' counsel had no objection to the special verdict damage award of attorney fees as a measure of damages. This conclusion reads as follows:

> "5. That the Court inquired of Plaintiffs' counsel after the verdict was read as to whether he had any objections to the nature of the damage award, such award specifying attorneys fees in an unstated amount rather than specifying a dollar figure as damages, and Plaintiffs' counsel then stating he had no objection."

Appellants allege that there was a discussion about the attorney fees, but such discussion was not in front of the jury as the conclusion of law implies. It is argued that

this mischaracterization of the appellants' position on the propriety of the damage award prejudiced their cause.

We have reviewed the transcript in detail and find the conclusion of law neither misleading nor prejudicial. We do not agree with counsel that the statement implies the conversation was held in front of the jury.

### III

Appellants' third contention is that the award of attorney fees was an inappropriate measure of damage. The verdict returned by the jury did not specify the damages in dollars and cents despite instructions on the verdict form. The jury inserted "court costs and lawyers fees" in lieu of a specified dollar amount. District Court Judge Salansky set a later hearing to determine the exact amount of those fees and costs. At this hearing it was determined that fees and costs totaled $10,933.50 and $2,581.19 respectively. This award was incorporated into the judgment of the court dated January 25, 1983.

Prevailing parties are generally not awarded attorney fees in Montana unless a statutory or contractual provision expressly provides for such. This Court has recognized the right of the District Court to grant a party complete relief under their powers of equity. Holmstrom Land Co. v. Hunter (1979), 182 Mont. 43, 595 P.2d 360; Foy v. Anderson (1978), 176 Mont. 507, 580 P.2d 114.

The case at bar can be distinguished from the above cited cases in which an award of attorney fees was made to make the prevailing party whole. In the present case attorney fees were granted by the jury in their special verdict form as a measure of damages. The jury found that appellants

Francis and Alice Shepard caused damage to the Hargraves' headgate by trespassing and attempting to stop the flow of water through the dam. This reprehensible form of self-help provoked events which culminated in the lawsuit. The Hargraves as defendants were compelled to expend substantial sums of money to prove that which was obvious to them from the start: their valid senior right to thirteen cubic feet per second of McGregor Creek. The damages are consequential to the interference with the headgate, though not so remote to preclude recovery. We affirm the trial court's determination that such damages are compensable. We do not condone the method by which the jury calculated the amount of the damage award, by simply substituting and granting attorney fees and costs. However, given the particular circumstances presented, we will not disturb the award for its technical flaws.

IV

As a final matter, we address the Hargraves' cross-appeal claiming additional compensation for decreased cattle production and crop losses due to appellants' interference with their headgate. This claim was timely presented by the testimony and evidence in the proceeding below. The jury considered and refused such compensation. We will not substitute our judgment for theirs. The cross-appeal is denied.

The judgment of the District Court is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
                Justices