No. 95-094

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

---

JACK R. TANNER and PATRICIA L. TANNER,
FREDERICK McFARLAND, SHERRIE McFARLAND,
and THOMAS J. FARRELL,

     Plaintiffs, Respondents, and
     Cross-Appellants,

  v.

DREAM ISLAND, INC., a Nevada Corporation,
and JUANITA DALY,

     Defendants, Appellants, and
     Cross-Respondents.

FILED

MAR 2 1 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

---

APPEAL FROM:  District Court of the Twentieth Judicial District,
             In and for the County of Lake,
             The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

          John M. Morrison, Meloy & Morrison,
          Helena, Montana

     For Respondents:

          James A. Manley, Manley Law Offices,
          Polson, Montana

---

Submitted on Briefs:  January 25, 1996

Decided:  March 21, 1996

Filed:

Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Defendants appeal from jury findings incorporated into a judgment, order, and permanent injunction issued by the Twentieth Judicial District Court, Lake County. The District Court adopted the jury's special verdict concerning disputed road easements and permanently enjoined defendants from obstructing plaintiffs' use and enjoyment of the easements. Plaintiffs cross-appeal on the issue of attorney fees. We affirm in part and reverse in part.

The issues on appeal are as follows:

1. What is the effect of the District Court's injunction, issued during the trial, which prevented Daly from obstructing plaintiffs' use and enjoyment of Indian Boulevard?

2. Was there substantial credible evidence to support the jury verdict which found road easements by grant, prescription, and necessity?

3. Did the District Court err in instructing the jury regarding prescriptive easements?

4. Did the District Court abuse its discretion in concluding that an equitable award of attorney fees was not proper for either party in this case?

## FACTS

The parties are adjoining landowners of lake front property on Flathead Lake. The properties are part of Lot 4, Block 2, of the Armo Villa townsite near the town of Big Arm. When the United States government platted the villa sites in 1910 it reserved a

2

forty-foot boulevard called Indian Boulevard between the lots and the lake shore. This boulevard, like others around the lake, has historically been used for vehicular and foot traffic. In some places the boulevard has been used by adjacent lot owners as a lawn area or for cabin sites or boat houses.

In 1932 Lot 4, Block 2, was divided in half. The Mueller Realty Company conveyed the north half to Eugenia Rochester (who also owned a nearby island named Dream Island) and the south half to Harry Mueller. Plaintiffs' title derives from Mueller and defendants' title derives from Rochester. The indenture to Rochester reserved:

> [A] right-of-way for road purposes over and upon the premises herein conveyed, to Harry J. Mueller of Butte, Montana, and to his heirs and assigns, forever, over and upon any and all roads now laid out and heretofore traveled over upon and across said premises, or any portion thereof.

The transfer of the south half of Lot 4 to Mueller contained an identical easement reservation over and upon the land conveyed to Rochester.

In 1959 Juanita Daly and her late husband, Marcus Daly III, purchased the north half of Lot 4 and Dream Island (the Daly property) from the Kirks who then owned the Rochester property. In 1964 the Dalys conveyed the property to Dream Island, Inc., a solely owned private corporation. In 1965 Ross and Delores Young purchased the south half of Lot 4 from the Boetchers who then owned the Mueller property. The Youngs subdivided the property into

3

three smaller lots. These sublots were purchased by plaintiffs' predecessors and later conveyed to plaintiffs for summer homes.

In 1971 Jack and Patricia Tanner purchased the sublot adjacent to the Daly property (the Tanner property). In 1981 Frederick and Sherrie McFarland purchased the sublot adjacent to the Tanner property (the McFarland property). In 1971 Thomas Farrell purchased the third sublot which lies adjacent to the Tanner and McFarland properties (the Farrell property). In 1974 Farrell conveyed his property to the United States to be held in trust for him as a tribal member.

The Daly property lies north of the plaintiffs' property except for a small triangle of the McFarland property which is situated north of the Daly property. The Tanner property lies adjacent to and south of the Daly property. The McFarland property lies adjacent to and south of the Tanner property. The Farrell property lies adjacent to and southeast of both the Tanner and McFarland properties. The roads at issue are designated as A, A1, A2, B, C, D, E, F, and G.

No witnesses were found who remembered the property in 1932 but two nearby landowners remembered the property as far back as 1934 or 1935. Sid Walker clearly remembers that the Rochesters and others, including the Tanners' predecessors, used roads A and G. Red Tucker bought nearby property in the mid-1930s and identified road B as the old county road. He and other landowners used road A to get down to road G on the boulevard. He testified that the

4

public, as well as the parties' predecessors, used roads A, B, and G. Other testimony established that prior residents used roads A, G, and E.

Tanner testified that he has used roads A, A2, D, E, and G. Mrs. McFarland testified that she and her husband have used roads A, B, F, and G and Farrell testified that he has used roads A, A1, A2, and G. The Tanners and Farrells testified that they have used the roads for over twenty years and all parties stated they never sought permission from Daly to use the roads, as they believed permission was not necessary. Although Daly objects to plaintiffs using road A across her property, she admits that she uses road A across other people's property without their permission.

In 1989 Daly's attorney wrote a letter to the plaintiffs acknowledging that plaintiffs had an easement over her property for those roads which were in existence in 1932--roads A and G--but that she intended to rescind her alleged permission to use other roads running across her property. Daly indicated in her letter that she intended to install a fence down the south boundary of her property, thereby blocking use of roads B, C, and D.

In the fall of 1992, after the plaintiffs had left their property for the season, Daly erected a fence around her property. The fence extended nearly to the water, cutting off access to the Farrell property and to McFarlands' lake front property, as well as to their source of water. The fence made access to the Tanners' cabin difficult and cut Tanners off from their boat house, dock,

No.  95-094

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

---

JACK R. TANNER and PATRICIA L. TANNER,
FREDERICK McFARLAND, SHERRIE McFARLAND,
and THOMAS J. FARRELL,

       Plaintiffs, Respondents, and
       Cross-Appellants,

    v.

DREAM ISLAND, INC., a Nevada Corporation,
and JUANITA DALY,

       Defendants, Appellants, and
       Cross-Respondents.

**FILED**

MAR 2 1 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

---

APPEAL FROM:    District Court of the Twentieth Judicial District,
               In and for the County of Lake,
               The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

              John M. Morrison, Meloy & Morrison,
              Helena, Montana

       For Respondents:

              James A. Manley, Manley Law Offices,
              Polson, Montana

---

                Submitted on Briefs:  January 25, 1996

                      Decided:  March 21, 1996

Filed:

_____
          Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Defendants appeal from jury findings incorporated into a judgment, order, and permanent injunction issued by the Twentieth Judicial District Court, Lake County. The District Court adopted the jury's special verdict concerning disputed road easements and permanently enjoined defendants from obstructing plaintiffs' use and enjoyment of the easements. Plaintiffs cross-appeal on the issue of attorney fees. We affirm in part and reverse in part.

The issues on appeal are as follows:

1. What is the effect of the District Court's injunction, issued during the trial, which prevented Daly from obstructing plaintiffs' use and enjoyment of Indian Boulevard?

2. Was there substantial credible evidence to support the jury verdict which found road easements by grant, prescription, and necessity?

3. Did the District Court err in instructing the jury regarding prescriptive easements?

4. Did the District Court abuse its discretion in concluding that an equitable award of attorney fees was not proper for either party in this case?

### FACTS

The parties are adjoining landowners of lake front property on Flathead Lake. The properties are part of Lot 4, Block 2, of the Armo Villa townsite near the town of Big Arm. When the United States government platted the villa sites in 1910 it reserved a

2

forty-foot boulevard called Indian Boulevard between the lots and the lake shore. This boulevard, like others around the lake, has historically been used for vehicular and foot traffic. In some places the boulevard has been used by adjacent lot owners as a lawn area or for cabin sites or boat houses.

In 1932 Lot 4, Block 2, was divided in half. The Mueller Realty Company conveyed the north half to Eugenia Rochester (who also owned a nearby island named Dream Island) and the south half to Harry Mueller. Plaintiffs' title derives from Mueller and defendants' title derives from Rochester. The indenture to Rochester reserved:

> [A] right-of-way for road purposes over and upon the premises herein conveyed, to Harry J. Mueller of Butte, Montana, and to his heirs and assigns, forever, over and upon any and all roads now laid out and heretofore traveled over upon and across said premises, or any portion thereof.

The transfer of the south half of Lot 4 to Mueller contained an identical easement reservation over and upon the land conveyed to Rochester.

In 1959 Juanita Daly and her late husband, Marcus Daly III, purchased the north half of Lot 4 and Dream Island (the Daly property) from the Kirks who then owned the Rochester property. In 1964 the Dalys conveyed the property to Dream Island, Inc., a solely owned private corporation. In 1965 Ross and Delores Young purchased the south half of Lot 4 from the Boetchers who then owned the Mueller property. The Youngs subdivided the property into

3

three smaller lots. These sublots were purchased by plaintiffs' predecessors and later conveyed to plaintiffs for summer homes.

In 1971 Jack and Patricia Tanner purchased the sublot adjacent to the Daly property (the Tanner property). In 1981 Frederick and Sherrie McFarland purchased the sublot adjacent to the Tanner property (the McFarland property). In 1971 Thomas Farrell purchased the third sublot which lies adjacent to the Tanner and McFarland properties (the Farrell property). In 1974 Farrell conveyed his property to the United States to be held in trust for him as a tribal member.

The Daly property lies north of the plaintiffs' property except for a small triangle of the McFarland property which is situated north of the Daly property. The Tanner property lies adjacent to and south of the Daly property. The McFarland property lies adjacent to and south of the Tanner property. The Farrell property lies adjacent to and southeast of both the Tanner and McFarland properties. The roads at issue are designated as A, A1, A2, B, C, D, E, F, and G.

No witnesses were found who remembered the property in 1932 but two nearby landowners remembered the property as far back as 1934 or 1935. Sid Walker clearly remembers that the Rochesters and others, including the Tanners' predecessors, used roads A and G. Red Tucker bought nearby property in the mid-1930s and identified road B as the old county road. He and other landowners used road A to get down to road G on the boulevard. He testified that the

public, as well as the parties' predecessors, used roads A, B, and G. Other testimony established that prior residents used roads A, G, and E.

Tanner testified that he has used roads A, A2, D, E, and G. Mrs. McFarland testified that she and her husband have used roads A, B, F, and G and Farrell testified that he has used roads A, A1, A2, and G. The Tanners and Farrells testified that they have used the roads for over twenty years and all parties stated they never sought permission from Daly to use the roads, as they believed permission was not necessary. Although Daly objects to plaintiffs using road A across her property, she admits that she uses road A across other people's property without their permission.

In 1989 Daly's attorney wrote a letter to the plaintiffs acknowledging that plaintiffs had an easement over her property for those roads which were in existence in 1932--roads A and G--but that she intended to rescind her alleged permission to use other roads running across her property. Daly indicated in her letter that she intended to install a fence down the south boundary of her property, thereby blocking use of roads B, C, and D.

In the fall of 1992, after the plaintiffs had left their property for the season, Daly erected a fence around her property. The fence extended nearly to the water, cutting off access to the Farrell property and to McFarlands' lake front property, as well as to their source of water. The fence made access to the Tanners' cabin difficult and cut Tanners off from their boat house, dock,

5

and barbecue pit.   The fence was constructed of iron fence posts and chicken wire and the east end was nailed to the Tanners' boat house.   When Mr. Tanner returned to the property in May 1993, he hired a crew to remove the section of the fence which crossed the boulevard.



In March 1993 the Tanners and McFarlands filed a complaint in District Court claiming easements by grant and prescription and seeking an injunction to prohibit Daly from obstructing the use of their property or their egress and ingress. Plaintiffs requested a jury trial to determine compensatory, emotional distress, and punitive damages. In September 1993 the District Court granted plaintiffs' motion to join Farrell as a plaintiff who alleged easements by grant, prescription, and necessity.

On June 13, 1994, Daly filed a motion for partial summary judgment on the issues of emotional distress, compensatory damages, and punitive damages. On July 20, 1994, Daly filed a motion for partial summary judgment on the issue of attorney fees. Plaintiffs subsequently withdrew their claim for emotional distress and on July 22, 1994, the District Court denied Daly's motion for summary judgment on compensatory and punitive damages. The claims for compensatory and punitive damages went to trial on August 30 and 31, 1994. In an August 30, 1994, opinion and order, the District Court concluded as a matter of law that attorney fees were not available to either party.

During trial the District Court issued an injunction prohibiting Daly from blocking road G which sits on Indian Boulevard. However, because there was still an issue of the reasonableness or maliciousness of Daly's actions in erecting the fence across the boulevard, the District Court did not want the jury contaminated or Daly prejudiced by knowledge of the

7

injunction. The parties and the court agreed that the jury's special verdict form would therefore include the issue of easements over road G, even though that issue had already been decided by the court as a matter of law.

The jury returned a special verdict for the plaintiffs and on September 12, 1994, the District Court entered its judgment and order incorporating the jury verdict. The jury determined that all plaintiffs had an easement by grant over roads A, A1, A2, B, and G. The jury found that Tanner had a prescriptive easement over roads D, E, and G, and that McFarland had a prescriptive easement over roads E and G. In addition, the jury found that Farrell had a prescriptive easement over road G, as well as an easement by necessity over roads A, A1, and G. The jury awarded compensatory damages in the amount of $166.25 (costs to remove the fence) and determined that no punitive damages should be awarded. On November 2, 1994, the District Court issued its final opinion, order, and permanent injunction denying the defendants' motion for judgment notwithstanding the verdict and upholding the jury verdict. This appeal and cross-appeal followed.

## ISSUE 1

What is the effect of the District Court's injunction, issued during the trial, which prevented Daly from obstructing plaintiffs' use and enjoyment of Indian Boulevard?

Ownership of Indian Boulevard is a complex issue with a number of different parties, including individual landowners, Lake County,

the Confederated Salish and Kootenai Tribes, and the United States government, all claiming ownership interest. The plaintiffs did not allege ownership of the boulevard in their complaint and stated that resolution of that issue was beyond the scope of this action. Plaintiffs instead claimed that Daly had no right to the exclusive use of road G on the boulevard either because it belonged to the United States government or, if Daly did own it, it was subject to easements.

On the second day of trial, and out of the presence of the jury, the District Court concluded as a matter of law that:

> Until such time as [Daly] has acquired a right to [Indian Boulevard] or permission from a court of jurisdiction, after serving notice on the Tribe and on the United States Government, and bringing an action with them as parties, she's enjoined from obstructing [road G on the boulevard].

In its November 2, 1994, opinion and order, the District Court clarified this issue:

> As to road G, the Court has previously ruled, as a matter of law, that ownership of Indian Boulevard cannot be decided without naming the relevant native american tribes and the United States government. However, as between Plaintiffs and Defendants, the jury found that to the extent Defendants claim to have any interest in road G, there is an easement by grant across Indian Boulevard in favor of Plaintiffs which is enforceable against the Defendants' claimed interest. Thus, Defendants and their successors in interest are permanently enjoined by the Court from obstructing in any way Plaintiffs' use and enjoyment of road G, no matter whom is ultimately decided to be the owner of Indian Boulevard.

Daly does not appeal the issuance of the injunction concerning the boulevard, but rather limits her appeal to the easement

9

determinations. The issuance of the injunction renders the easement issues as to road G moot. As noted above, the jury was purposely made unaware of the fact that the District Court had issued an injunction during trial concerning Indian Boulevard. The jury therefore addressed the issue of easements over road G during its deliberation. Since the issuance of the injunction regarding road G is not before us and since the injunction renders the easements over the boulevard moot, we conclude that a review of the jury findings pertaining to easements on road G is unnecessary.

ISSUE 2

Was there substantial credible evidence to support the jury verdict which found road easements by grant, prescription, and necessity?

We review a jury's verdict to determine if it is supported by substantial credible evidence. Barthule v. Karman (1994), 268 Mont. 477, 485, 886 P.2d 971, 976 (citing Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 322-23, 820 P.2d 1285, 1287). Substantial evidence is defined as that evidence that a reasonable mind might accept as adequate to support a conclusion. Head v. Central Reserve Life (1993), 256 Mont. 188, 201, 845 P.2d 735, 743. Evidence which is inherently weak and conflicting may still be considered substantial. Head, 845 P.2d at 743. When conflicting evidence exists, the weight and credibility given to it are within the province of the jury. Whiting v. State (1991), 248 Mont. 207, 213, 810 P.2d 1177, 1181. When determining if

10

substantial evidence exists, this Court views the evidence in the light most favorable to the prevailing party. Whiting, 810 P.2d at 1181.

### Easements by Grant

The jury found that plaintiffs possessed an easement by grant over roads A, A1, A2, and B, based on the 1932 deed transfers from the Mueller Realty Company to Eugenia Rochester and Harry Mueller. Daly argues on appeal that (1) she was a bona fide purchaser without knowledge of the easements, and (2) there was not sufficient evidence indicating that the above-mentioned roads were those referenced in the 1932 deeds.

Daly's first argument fails for two reasons. The deeds in question which refer to the easements were admitted as plaintiffs' exhibits "C" and "D" at trial. The exhibits, on their face, indicate they were both recorded in the Lake County land records on October 19, 1932. The parties stipulated that the chain of title documents would be admitted into evidence without foundational testimony. Even though Daly argues on appeal that the deeds bears no signatures or notary seal, Daly did not object when the exhibits were admitted into evidence. She cannot now be allowed to refute the deeds' authenticity as failure to object to the issue at trial precludes her from raising the issue on appeal. See Hando v. PPG Industries, Inc. (1995), 272 Mont. 146, 900 P.2d 281; Bridger v. Lake (1995), 271 Mont. 186, 896 P.2d 406. Furthermore, Daly admitted that she was aware of the roads across her property when

11

she and her husband purchased the land, thus she had actual knowledge of the roads and therefore cannot now claim bona fide purchaser status.

With respect to Daly's second argument, she is correct that there is no direct evidence that roads A, A1, A2, and B were those referred to in the 1932 deed. Neither party could find anyone whose memory dated back that far or obtain aerial photographs that old. However, the jury was presented with circumstantial evidence regarding the roads in question. Two elderly witnesses, Sid Walker and Red Tucker, testified that roads A and B existed in the mid-1930s and were well-traveled at the time. Walker identified the roads from a 1937 aerial photograph and testified that he used road A as a youngster to reach the lake. Tucker testified that road A was used at the time to get down to the boulevard and that road B was the old county road. Furthermore, Daly's attorney admitted in the 1989 letter to the plaintiffs that road A existed in 1932.

The jury was presented with the evidence and weighed the testimony accordingly. Roads A1 and A2 are actually a part of road A and are merely different forks, both of which lead to road G on the boulevard. Testimony was received that the public used road A in the mid-1930s to reach road G and that road B was the old county road. We conclude there was substantial credible evidence to support the jury's finding that plaintiffs possessed an easement

12

by grant over roads A, A1, A2, and B, and therefore affirm that portion of the jury's verdict.

## Easements by Prescription

The jury determined that Tanner possessed a prescriptive easement over roads D and E and that McFarland possessed a prescriptive easement over road E. Daly argues that there was no evidence in the record which established that plaintiffs' use of roads D and E was not permissive. Daly relies on a theory of neighborly accommodation alleging there was never any discussion between the parties or their predecessors regarding use of the roads and argues that courtesy by neighbors is not adverse and cannot ripen into a prescriptive easement.

Plaintiffs concede that the jury erred in finding a prescriptive easement over road E in McFarlands' favor. The McFarlands did not testify that they used road E and therefore they did not establish a prescriptive use of the road. The Tanners, however, claim they were using roads D and E adversely under a belief of right based on the language of the 1932 deeds and argue that the burden was on Daly to show that the use was permissive.

To establish an easement by prescription, the party claiming the easement must show open, notorious, exclusive, adverse, continuous, and uninterrupted use of the easement claimed for the full statutory period of five years. Public Lands Access v. Boone & Crockett (1993), 259 Mont. 279, 283, 856 P.2d 525, 527 (citing Keebler v. Harding (1991), 247 Mont. 518, 521, 807 P.2d 1354,

13

1356). The burden is on the party seeking to establish the prescriptive easement and all elements must be proved. Public Lands Access, 856 P.2d at 527 (citing Downing v. Grover (1989), 237 Mont. 172, 175, 772 P.2d 850, 852). To be adverse the use of the alleged easement must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land. Public Lands Access, 856 P.2d at 527 (citing Keebler, 807 P.2d at 1356-57). Such claim must be known to and acquiesced in by the owner of the land. Public Lands Access, 856 P.2d at 527 (citing Keebler, 807 P.2d at 1357).

If the owner shows permissive use, no easement can be acquired since the theory of prescriptive easement is based on adverse use. Public Lands Access, 856 P.2d at 527 (citing Rathbun v. Robson (1983), 203 Mont. 319, 322, 661 P.2d 850, 852). We have stated that "'where the use of a way by a neighbor was by express or implied permission of the owner . . . continuous use of the way by the neighbor [is] not adverse and [does] not ripen into a prescriptive right.'" Public Lands Access, 856 P.2d at 528 (quoting Wilson v. Chestnut (1974), 164 Mont. 484, 491, 525 P.2d 24, 27).

Roads D and E branch off of road A and lead to the Tanners' garage which has been there for at least fifty years. Mr. Tanner testified that he has used the roads openly and continuously and without permission for as long as he has owned his property--over twenty years. The Tanners believed they had a right to use the

14

roads based on the language of the 1932 deed and therefore permission from Daly was unnecessary. The Tanners were under no duty to communicate to Daly they were using the roads under a claim of right and adversely to her. See Woods v. Houle (1988), 235 Mont. 158, 162, 766 P.2d 250, 252.

Daly was aware of the 1932 deeds and their reservation of easements, and was also aware of the Tanners' use of the roads. The Tanners and Daly had unsuccessfully attempted to work out a cooperative maintenance agreement for roads. Daly was therefore aware of the right created by the deeds and acquiesced in the Tanners' use of the roads for a number of years. The Tanners established a presumption of adverse use of roads D and E under a claim of right based on their 1932 deed.

We have stated that "'[i]n order to overcome [the claim of right] presumption, thereby saving its title from the encumbrance of an easement, the burden is on the defendant to show that the use was permissive.'" Woods 766 P.2d at 252 (quoting Groshean, et al. v. Dillmont Realty Co. (1932), 92 Mont. 227, 239-40, 12 P.2d 273, 275). The burden therefore shifted to Daly to present evidence of permissive use in support of her theory of neighborly accommodation.

Daly testified as follows:

Q: Now, you would agree, would you not, that you never gave anybody permission to use Roads B, C, D, E, F or G?

A: I never told them not to.

15

Q: Well, would you agree that, in your deposition, you admitted that you never gave anyone permission to use any of those roads?

A: Right

. . . .

Q: You didn't, in fact, socialize with them, did you?

A: No.

Q: You didn't have much contact at all with them, did you?

A: No.

Q: You didn't ever do anything --

A: No.

Q: -- that led them to believe that you were granting them permission?

A: No.

The jury was presented with evidence and weighed the testimony concerning whether or not Daly granted permission to plaintiffs to use the roads in support of her theory of neighborly accommodation. The jury concluded that permissive use had not been established. The District Court stated that "there has been anything but neighborly accommodation on the part of Defendants regarding Plaintiffs' use of the roads in question."

We conclude that there was substantial credible evidence to support the jury's finding that the Tanners possessed a prescriptive easement over roads D and E and therefore affirm that portion of the jury's verdict. We further conclude that the jury's finding that McFarland possessed a prescriptive easement over road

16

E is not supported by substantial credible evidence. We reverse that portion of the jury's verdict and remand for further proceedings in that regard.

## Easements by Necessity

The jury determined that Farrell possessed an easement by necessity over roads A and A1. Daly argues that this issue should not have gone to the jury and that no easements by necessity were established as a matter of law, citing Schmid v. McDowell (1982), 199 Mont. 233, 649 P.2d 431.

In Issue 2 we held that all of the plaintiffs possessed an easement by grant over roads A, A1, A2, and B. We therefore need not reach the issue of whether Farrell possessed an easement by necessity over roads A and A1.

## ISSUE 3

Did the District Court err in instructing the jury regarding prescriptive easements?

The District Court instructed the jury as follows:

The use of a neighbor's land based on neighborly accommodation or courtesy is not adverse and cannot ripen into a prescriptive easement. Thus, where the use of a right-of-way by a neighbor was by express or implied permission of the owner, the continuous use of the way by the neighbor is not adverse and does not ripen into a prescriptive right. The mere use of a way for the required time is not sufficient to give rise to the presumption of a grant. Some circumstances or act, in addition to the use, tending to indicate that the use was not merely permissive, is required.

To establish an easement by prescription, the burden is on the Plaintiffs to show several elements. Plaintiffs or their predecessors in interest must have used the route openly, notoriously, exclusively, adversely,

17

continuously, and uninterrupted for the full statutory period of five years.

Once the Plaintiffs establish these elements, adverse use is presumed, and the burden is then on the Defendants to show that the use was permissive.

The Plaintiffs and their predecessors were under no duty to communicate by word of mouth to Defendants, or their predecessors in interest, that Plaintiffs were using the roadway under a claim of right and adversely to Defendants.

Daly argues that on the one hand the District Court instructed the jury that the use of a neighbor's land based on neighborly accommodation is not adverse and cannot ripen into a prescriptive easement. Yet, on the other hand, the District Court instructed the jury that adverse use is presumed once the remaining elements for prescriptive easement are established. Daly claims that where the defense is permissive use through neighborly accommodation the presumption of adverse use should not apply.

The plaintiffs counter that the presumption of adverse use applies in both express permission and implied permission situations and in any event Daly still had the burden to establish permissive use. The plaintiffs argue that even if the instruction was improper, it was harmless error because Daly did not come forward with sufficient evidence showing neighborly accommodation or permissive use.

The general rule in Montana is that "'[i]f the given instructions, when viewed in their entirety, state the correct law applicable to the case, there is no reversible error.'" Buhr v. Flathead County (1994), 268 Mont. 223, 235, 886 P.2d 381, 388

18

(quoting Walden v. State (1991), 250 Mont. 132, 137, 818 P.2d 1190, 1193). We have stated that "'[w]hen examining whether certain jury instructions were properly given or refused, we must consider the jury instructions in their entirety and in connection with other instructions given and the evidence introduced at trial.'" Buhr, 886 P.2d at 388 (quoting Story v. City Bozeman (1993), 259 Mont. 207, 222, 856 P.2d 202, 211).

We conclude that the jury instruction given by the District Court correctly states the law applicable to the case. The substance of the instruction was taken from our holdings in Public Lands and Woods and it embodies the requirement that Daly has the burden to present evidence of permissive use. Plaintiffs believed they were using the roads adversely under a claim of right derived from the 1932 deed and Daly failed to adequately rebut this presumption. We affirm the District Court on this issue.

ISSUE 4

Did the District Court abuse its discretion in concluding that an equitable award of attorney fees was not proper for either party in this case?

In its July 22, 1994, opinion and order denying Daly's motion for summary judgment on the issue of compensatory damages, the District Court stated that "should Plaintiffs prevail on their malice claims, equity may require an award of attorneys' fees under the Foy exception in order to fully compensate Plaintiffs in this action."

19

(1990), 245 Mont. 308, 800 P.2d 1053, and urges us to affirm the District Court's grant of summary judgment in her favor.

The longstanding rule in Montana is that absent statutory or contractual authority attorney fees will not be awarded. Howell v. State (1994), 263 Mont. 275, 285, 868 P.2d 568, 574 (citing Goodover v. Lindey's, Inc. (1992), 255 Mont. 430, 445, 843 P.2d 765, 774; Bitney v. School Dist. No. 44 (1975), 167 Mont. 129, 137, 535 P.2d 1273, 1277; Ehly v. Cady (1984), 212 Mont. 82, 100, 687 P.2d 687, 696). Our review of a district court's legal conclusion that no basis for attorney fees exists is plenary. Howell, 868 P.2d at 574 (citing Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603).

In isolated instances a district court may award attorney fees to make an injured party whole under its equity powers. See Stickney v. State (1981), 195 Mont. 415, 636 P.2d 860; Holmstrom Land Co. v. Hunter (1979), 182 Mont. 43, 595 P.2d 360; Foy. Furthermore, in certain instances in which bad faith or malicious behavior are involved this Court has made an equitable award of attorney fees. See Matter of Estate of Lindgren (1994), 268 Mont. 96, 102, 885 P.2d 1280, 1284.

In Foy we created an exception to the general rule in order to compensate a party who, through no fault of her own, had been forced to hire an attorney to write and argue a motion to dismiss. We have subsequently explained the distinguishing characteristics of Foy by stating: "The *Foy* exception has been narrowly drawn and

21

However, in its August 30, 1994, opinion and order the District Court concluded that "[t]his Court has been presented with no facts which would justify the imposition of attorneys' fees under the Foy exception, and the equitable awarding of attorneys' fees is not proper as to either party in this case."

The District Court further ordered that neither party would be allowed to present evidence of attorney fees to the jury, thus concluding as a matter of law that any compensatory damages which might be awarded would not include attorney fees.

Plaintiffs argue that the District Court misconstrued their claim for attorney fees. Plaintiffs rely on Boz-Lew Builders v. Smith (1977), 174 Mont. 448, 571 P.2d 389, and Cate v. Hargrave (1984), 209 Mont. 265, 680 P.2d 952, and argue that when Daly erected the fence and denied them access to their lake shore properties, dock, and boat house, she set in motion a sequence of events under which they would inevitably incur attorney fees. Plaintiffs contend that the District Court erred by analyzing the issue under Foy v. Anderson (1978), 176 Mont. 507, 580 P.2d 114, and maintain that the issue should have gone to the jury as part of its determination of compensatory damages.

Daly counters that the decision of whether or not to award attorney fees involves a question of equity and therefore lies within the discretionary powers of the District Court. Daly argues that resolution of the issue is controlled by Rasmussen v. Fowler

20

is applicable only where the action into which the prevailing party has been forced is utterly without merit or frivolous." Goodover, 843 P.2d at 776 (citing State ex rel. Wilson v. Dept. of Natural Resources (1982), 199 Mont. 189, 202, 648 P.2d 766, 772).

We first note that the present case presents neither a statutory nor a contractual basis for the award of attorney fees. Furthermore, we conclude this case does not fit within any of the narrow exceptions to the general rule. The Foy exception is not applicable, as here the plaintiffs obtained an attorney to initiate legal action. They were not forced to defend wholly frivolous litigation through no fault of their own. We stated in Goodover that "Goodover's position as the plaintiff in this litigation . . . will preclude an award of attorney's fees under *Foy*." Goodover, 843 P.2d at 775. Nor does the exception involving malicious action apply to the present case. Even though plaintiffs sought punitive damages due to Daly's alleged malicious conduct, the jury determined that punitive damages should not be awarded. The plaintiffs did not appeal that finding.

Plaintiffs' reliance on Cate is misplaced. There we affirmed the jury's award of attorney fees to Hargrave, a senior water appropriator, who suffered damages to a dam and headgate due to Cate's interference with the dam and headgate. Cate filed suit for a judicial determination as to whether Hargrave was wasting water by failing to maintain the dam and whether Hargrave was exceeding

22

his lawful appropriation of water.  We affirmed the jury's award of attorney fees stating:

> The Hargraves as <u>defendants</u> were compelled to expend substantial sums of money to prove that which was obvious to them from the start:  their valid senior right to thirteen cubic feet per second of McGregor Creek.

<u>Cate</u>, 680 P.2d 957 (emphasis added).

We distinguish the present case from <u>Cate</u> by noting that here the plaintiffs were not forced to defend a frivolous legal action nor were the easement rights they claimed as definitive as those associated with Hargrave's senior water right.  Finally, while we do not condone Daly's actions in erecting the fence around her property we cannot conclude that such action is so reprehensible as to fall in line with our holding in <u>Cate</u>.

In <u>Rasmussen</u> the plaintiff operated a dry-land wheat farm on state leasehold property.  When the defendant erected a gate across a road used by Rasmussen to reach the property, Rasmussen filed suit and requested injunctive relief.  We determined that a prescriptive easement existed across the road but affirmed the district court's denial of attorney fees.  <u>Rasmussen</u>, 800 P.2d at 1057.

We have held that absent an abuse of discretion this Court will not reverse the district court's decision concerning attorney fees.  Sage v. Rogers (1993), 257 Mont. 229, 242, 848 P.2d 1034, 1042 (citing Joseph Russell Realty Co. v. Kenneally (1980), 185 Mont. 496, 505, 605 P.2d 1107, 1112).  The test for abuse of discretion is whether the trial court acted arbitrarily without

23

employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. Gaustad v. City of Columbus (1995), 272 Mont. 486, 488, 901 P.2d 565, 567. We conclude that the District Court did not abuse its discretion in determining that an equitable award of attorney fees was not proper for either party in this case. We affirm the District Court on this issue.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

24