DISTRICT JUDGE RODEGHIERO,
sitting for CHIEF JUSTICE TURNAGE, dissenting:
¶29 I dissent. The majority is, in effect, entering a permanent injunction without holding a factual hearing. I would not accept original jurisdiction because a factual hearing would likely demonstrate that the majority’s decision is too broad. This case involves more than pure legal questions of statutory or constitutional construction.
¶30 The Affidavit of Jack Stults, Administrator of the Water Resources Division of the DNRC provides several examples that illustrate the existence of factual scenarios that would protect (or even enhance) reserved rights through a change in an existing right or the permitting of a new use on a source of supply. (See DNRC’s Brief in Response to Application for Original Jurisdiction) Accepting original jurisdiction and issuing a decision without allowing water users to present a factual record is unwarranted and premature. The normal appeal process is adequate to resolve those issues.
¶31 According to its Amicus Brief, the City of Poison has experienced population growth of 31.5% between 1990 and 1996. Poison has been forced to issue a moratorium on new subdivision approvals within the City service area because its application to the DNRC for a permit to drill an additional water well is on hold. (See Amicus Curiae Brief of the City of Poison)
¶32 The majority’s holding apparently precludes DNRC from issuing permits for groundwater use in this fast growing area of the state *458 even though uncertainty exists as to whether groundwater is included within the reserved water rights doctrine. See Big Horn River System (Wyo. 1988), 753 P.2d 76, 99, cert. denied, 488 U.S. 1040, 109 S.Ct. 863, 102 L.Ed.2d 987 (1989), holding that groundwater is not included in the doctrine, and In Re the General Adjudication of All Rights to Use Water in the Gila River System and Source (Ariz. 1999), 1999 Ariz. LEXIS 116, holding that a reserved right to groundwater may only be found where other waters are inadequate to accomplish the purpose of a reservation. Without analysis, the majority apparently assumes that groundwater is included within the Tribes’ reserved water right.
¶3 3 The practical consequences of the maj ority’s decision will be significant and will deprive some Montana citizens of one of life’s basic necessities, the use of water. Pervasive, unquantified Indian and non-Indian reserved water right claims exist through out Montana. The broad sweep of the majority decision issued in a factual vacuum is not appropriate.
¶34 It is commonly known that millions of acre feet of water flow out of Montana each year for appropriation and permitting by down stream states. It cannot be assumed that all the water within the confines of the Flathead Reservation is solely the Tribes’ Reserved water right. Surely there must be some water available in this area for domestic uses. At a minimum, ground water should not be foreclosed from beneficial use by all the citizens within the boundaries of the Flathead Reservation.
¶35 The concerns of the Tribes should be addressed on a case by case basis allowing interested persons the opportunity to address the factual issues in an administrative proceeding before the DNRC. While the Tribes’ reserved rights are being quantified, the provisional nature of the permits protect the Tribes’ reserved rights. Junior appropriators take their rights with constructive notice of the conditions existing at the time of their appropriation. Cate v. Hargrave (1984), 209 Mont. 265, 271, 680 P.2d 952.
¶36 Therefore, I respectfully dissent.