No. 92-067

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992


PAYNE REALTY AND HOUSING, INC.,

       Plaintiff,

  -vs-

FIRST SECURITY BANK OF LIVINGSTON,
a Montana corporation,

       Defendant and Appellant,

  and

HARRY JOE BROWN, JR.,

       Defendant, Respondent and Cross-Appellant.

**FILED**

DEC 17 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:  District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable John M. McCarvel, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Sidney R. Thomas, Moulton, Bellingham, Longo
& Mather, Billings, Montana

      For Respondent:

          Carl A. Hatch, Small, Hatch, Doubek & Pyfer,
Helena, Montana


                    Submitted on Briefs:  June 25, 1992

                            Decided:  December 17, 1992

Filed:

_____
          Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

This appeal involves a dispute between First Security Bank of Livingston and Harry Joe Brown over an earnest money deposit. Each party contends it is entitled to the $50,000 that Brown deposited with a realtor to secure the purchase of a ranch sold by the bank. First Security Bank of Livingston appeals from summary judgment entered in the Sixth Judicial District Court, Park County, Montana, in favor of Respondent, Harry Joe Brown.

Appellant contends that genuine issues of material fact exist which preclude summary judgment. We reverse and remand for resolution of the factual issues.

The sole issue raised by the appellant is:

Did the District Court err when it granted summary judgment in favor of Respondent and ordered the return of Respondent's earnest money deposit and the payment of attorney fees?

On August 29, 1988, Harry Joe Brown, Jr. (Brown) approached Payne Realty (Realtor) in Livingston, Montana. Brown wanted to purchase land in or near the Paradise Valley. After reviewing a brochure which described real estate known as the Riverside Ranch, Brown expressed an interest in the property. Brown arranged to view the property with the owner of the Riverside Ranch, First Security Bank of Livingston (Bank). While touring the Riverside Ranch, Brown was told of another piece of property known as the Elkhorn Ridge Ranch. The Bank owned this real estate as well.

The Bank and Brown entered into a buy-sell agreement for the Riverside Ranch on August 29, 1988. The agreement required that

2

Brown deposit $50,000 with the Realtor to insure Brown's compliance with the agreement. In exchange, the Bank promised to remove the property from the market for the duration of the buy-sell agreement. As part of the buy-sell agreement, the Bank agreed to provide financing for Brown. In addition, Brown received an option to purchase the Elkhorn Ridge Ranch. Finally, at Brown's request, the parties agreed on an early closing date, and planned to meet on October 1, 1988, in New York City to finalize the sale.

After Brown and the Bank President, Bruce Erickson (Erickson), reached a verbal agreement, the Realtor drafted the written buy-sell agreement. That same afternoon, Brown returned to the Realtor's office and "read every word" of the completed document. Brown made several changes to the agreement, including the deletion of two of the three standard remedies available to the seller upon a default by the buyer. Brown requested that forfeiture of the earnest money deposit be the only remedy available to the Bank in the event of Brown's default. Also, according to the Realtor, Brown requested the deletion of the lines in the buy-sell agreement that make the buy-sell agreement contingent on the buyer obtaining third-party financing.

Brown deposited $50,000 with the Realtor. In exchange, the Bank removed the ranch from the market for the fall season, a prime marketing time for Paradise Valley property. The Bank also incurred significant expense in preparing the property for Brown. The Bank moved the current tenants off the property by buying out their leasehold interest for approximately $17,000. Further, at

3

Brown's request, the Bank removed a complex irrigation/sprinkler system at a cost of $45,000.

On October 1, 1988, Erickson flew to New York City with his wife to complete the sale. At the closing, Brown informed Erickson that he was "disenchanted" with the sale. Brown requested a one-day extension of the closing date, which Erickson granted. Brown asked for this extension so that his counsel could review the closing documents, including a mortgage agreement proposed by the Bank. On October 2, 1988, Brown notified the Realtor, without notice to Erickson, that he was no longer interested in the Riverside Ranch purchase and wanted his earnest money deposit returned. On the same day, Brown asked the Bank for a one-week extension so that his Montana counsel could review the financing documents. Erickson granted this second extension as well. Meanwhile, the Realtor informed the Bank that Brown had contacted the real estate agency and wanted his deposit returned to him.

On October 4, 1988, the Bank provided Brown with a title commitment. On October 5, 1988, Brown sent another message to the Realtor asking again for the return of his money. The Bank did not hear from Brown on the last scheduled closing date of October 11, 1988. Twenty days after October 11, 1988, the Bank's attorney received a letter from Brown's attorney requesting the return of Brown's deposit. Included with the letter was a list of Brown's objections to the mortgage documents furnished by the Bank.

The Bank's attorney responded by asking whether Brown would be willing to close the real estate deal if all of his objections were

4

resolved. Brown's attorney informed the Bank that Brown did not wish to proceed with the transaction.

Payne Realty and Housing, Inc. initiated this lawsuit on October 24, 1988, by filing an interpleader action. Payne Realty asked the District Court to determine whether First Security Bank of Livingston, the seller of the ranch, or Harry Joe Brown, the purchaser, was entitled to the money paid by Brown to secure the ranch sale. Following discovery, Payne Realty was dismissed from the action and the parties were realigned with Brown as plaintiff and the Bank as defendant.

On May 23, 1990, District Judge Byron L. Robb granted summary judgment for the Bank based on an "ordinary, complete and unambiguous buy-sell agreement" and Brown's failure to complete the sale. The Buyer appealed the judgment to this Court. On March 4, 1991, this Court reversed the District Court judgment, finding genuine issues of material fact existed regarding the parties' intentions about financing terms. *Payne Realty and Housing, Inc. v. First Security Bank of Livingston* (1991), 247 Mont. 374, 807 P.2d 177.

Upon remand to the District Court, Brown disqualified Judge Robb and District Judge John M. McCarvel assumed jurisdiction of the case. Brown moved for summary judgment. The Bank moved to amend its answer and cross-claim. Judge McCarvel granted the Bank's motion to amend; however, all of the affirmative defenses set forth in the Bank's amended answer were dismissed when Judge McCarvel entered summary judgment for Brown on September 23, 1991.

5

In the District Court opinion, Judge McCarvel reasoned that the Bank, acting as both lender and seller, did not offer financing terms consistent with the buy-sell agreement; consequently, the financing terms were unacceptable to Brown and there was no "meeting of the minds." The Judge ordered the return of the earnest money to Brown, together with interest and attorney fees.

The Bank appeals the summary judgment entered by Judge McCarvel, contending that genuine issues of material fact exist. Brown cross-appeals the court's refusal to award paralegal fees.

Did the District Court err when it granted summary judgment in favor of Respondent and ordered the return of Respondent's earnest money deposit and the payment of attorney fees?

The purpose of summary judgment is to encourage judicial economy through the elimination of any unnecessary trial. However, summary judgment is never to be a substitute for trial if there is an issue of material fact. *Reaves v. Reinbold* (1980), 189 Mont. 284, 288, 615 P.2d 896, 898. Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgement as a matter of law. Rule 56(c), M.R.Civ.P.

It is well established that the party moving for summary judgment has the burden of showing a complete absence of any genuine factual issues. *D'Agostino v. Swanson* (1990), 240 Mont. 435, 442, 784 P.2d 919, 924; *Cereck v. Albertson's Inc.* (1981), 195 Mont. 409, 411, 637 P.2d 509, 511. To defeat the motion, the nonmoving party must set forth facts demonstrating a genuine factual issue exists.

6

*O'Bagy v. First Interstate Bank of Missoula* (1990), 241 Mont. 44, 46, 785 P.2d 190, 191. All reasonable inferences that may be drawn from the offered proof must be resolved in favor of the party opposing summary judgment. *D'Agostino*, 784 P.2d at 924; *Cereck*, 637 P.2d at 511.

As the moving party, Brown must carry the burden of showing a complete absence of factual issues. The Bank must demonstrate a factual controversy does exist. As we review the evidence, we will draw all reasonable inferences in favor of the nonmoving party, the Bank. If there is any doubt regarding the propriety of the summary judgment motion, it should be denied. *Whitehawk v. Clark* (1989), 238 Mont. 14, 18, 776 P.2d 484, 486-87.

In his motion for summary judgment, Brown makes two arguments: (1) the buy-sell agreement executed between the parties was not a binding contract; or in the alternative (2) if the buy-sell agreement was a binding contract, the Bank breached the contract by not providing financing that complied with the buy-sell agreement.

In support of its argument on appeal that summary judgment was inappropriate because factual controversies exist, the Bank disputes Brown's two contentions and raises four claims of its own. The Bank disputes that (1) the buy-sell agreement was a valid and binding contract; and (2) that Brown breached the binding buy-sell agreement when he refused to complete the purchase. Additionally, the Bank argues: (1) Brown manufactured reasons not to close and therefore prevented the Bank's performance; (2) Brown breached the

7

covenant of good faith and fair dealing; (3) based on his representations and behavior, Brown was estopped from objecting to the closing of the transaction; and (4) Brown committed negligent misrepresentation regarding his intentions.

The only way that the District Court could properly grant summary judgment to Brown is by determining that, based on the submitted record, (1) Brown prevailed on the first of his two arguments or that he prevailed on his second argument; and (2) that Brown can establish there are no factual issues related to the Bank's claims.

This is the second time that this lawsuit has come before this Court. When determining whether summary judgment is appropriate, "the papers supporting movant's position are closely scrutinized, while the opposing papers are indulgently treated, in determining whether the movant has satisfied his burden." *Kober v. Stewart* (1966), 148 Mont. 117, 122, 417 P.2d 476, 479. In viewing the record in the light most favorable to the nonmoving party, the Bank, we conclude that material factual issues exist and that these issues must be resolved at trial before the earnest money is properly awarded.

EXISTENCE OF CONTRACT

The Bank presented facts sufficient to establish that the parties entered into a valid and binding buy-sell agreement. The Bank refers the court to the buy-sell agreement itself. At the top of the agreement it reads: "This is a legally binding contract." As required by the terms of the agreement, Brown deposited $50,000

8

with the Realtor to insure his promise to complete the sale. In exchange, the Bank removed the property from the market for the duration of the buy-sell agreement. This exchange of consideration is sufficient to create a binding contract. *Wendy's of Montana v. Larsen* (1982), 196 Mont. 525, 529, 640 P.2d 464, 466. Subsequent submission of a mortgage agreement which did not conform with the terms of the buy-sell agreement may be evidence that there was no "meeting of the minds" at the time that the buy-sell agreement was signed; however a variation in terms does not establish that fact as a matter of law. An equally plausible explanation is that the variation in terms was inadvertent.

BREACH OF CONTRACT

In Brown's second argument, he contends that if the buy-sell agreement was binding, the Bank breached the contract when the Bank would not provide financing terms that complied with the buy-sell agreement. In support of his argument, Brown submitted to the court: (1) his own affidavit alleging that the Bank was "intractable" on changing terms and that in proposal after proposal the Bank refused to provide financing that was consistent with the buy-sell agreement; (2) an affidavit by Brown's attorney alleging that he had tried, on behalf of Brown, to negotiate acceptable changes in the proposed note and mortgage but was unable to obtain any agreement with the Bank; and (3) a post-closing letter from Brown's attorney to the Bank's attorney indicating that either there *was no meeting of the minds or the Bank refused to go forward* with the sale on the terms set forth in the buy-sell agreement.

9

The Bank raised a question of fact, in regard to Brown's second contention that the Bank breached the contract, by supplying the court with evidence that Brown, rather than the Bank, was the breaching party. Bank affidavits suggest the Bank intended to amend nonconforming financing terms to conform with the terms of the buy-sell agreement; yet, Brown did not wish to proceed with the transaction. Drawing inferences from the affidavits most favorable to the Bank, a fact-finder could find that the Bank was willing to provide financing consistent with the buy-sell agreement if Brown would identify the problem and agree to perform his part of the contract.

## BANK'S CLAIMS

The Bank asserts four claims. First, the Bank correctly asserts that a disputed factual issue exists concerning whether Brown manufactured reasons not to complete the purchase, thereby preventing the Bank's performance of the buy-sell agreement. Bank President, Bruce Erickson, testified in his affidavit that when Brown requested changes in the mortgage terms, the Bank accommodated Brown's requests by amending terms at variance with the buy-sell agreement. For example, the Bank agreed to Brown's demand that the deficiency judgment clause be removed from the mortgage.

Erickson supplied the court with evidence indicating that at the closing scheduled for October 1, 1988, Brown told the Bank he had become "disenchanted" with the property. Erickson testified that the Bank made numerous attempts to ascertain the nature of

10

Brown's objections to the completion of the sale, but that both Brown and his attorney refused to identify or discuss objections at the closing on October 1, 1988, or at any of the subsequently scheduled meetings.

Erickson testified that the Bank granted an extension of the October 1, 1988, closing date to Brown so that his counsel could review the financing documents; and that Brown contacted the Realtor on October 2, 1988, without notice to the Bank, and demanded the return of the earnest money. Brown contacted the Realtor again on October 5, 1988, asking for the return of the earnest money.

The Bank did not hear from Brown on the last scheduled closing date of October 11, 1988. Brown did not indicate to the Bank his objections to the financing documents until nearly three weeks after three closing dates had passed. On October 31, 1988, twenty days after the final closing date, Brown's attorney finally wrote to the Bank and listed Brown's objections to the mortgage terms.

The Bank's attorney, Sid Thomas (Thomas), testified that he responded to the letter from Brown's attorney and asked: "[a]ssuming all of the items in your letter are resolved, is he [Brown] still willing to proceed with the transaction?" Thomas testified that Brown's attorney indicated Brown was unwilling to proceed.

The Bank President testified by affidavit that the Bank at all times "stood ready, willing and able to complete the transaction upon the terms set forth in the buy-sell agreement," and that the

11

Bank was willing to accommodate any of Brown's reasonable concerns. Despite the Bank's efforts to answer Brown's needs, Brown refused to complete the purchase.

The Bank's legal assertion is correct: it is well-settled in Montana that one cannot prevent performance of a contract and then avail oneself of its non-performance. *Williams Bros. Construction v. Vaughn* (1981), 193 Mont. 224, 227, 631 P.2d 688, 690. Brown cannot object to the completion of the sale and refuse to discuss his objections with the Bank, and then claim that the Bank would not perform.

Second, there is a disputed factual issue regarding whether Brown breached the covenant of good faith and fair dealing. A party can breach the covenant of good faith and fair dealing without breaching any express term in the contract by failing to deal honestly in fact and failing to observe reasonable commercial standards of fair dealing in the trade. *Story v. City of Bozeman* (1990), 242 Mont. 436, 450, 791 P.2d 767, 775. If a party breaches the covenant of good faith and fair dealing, it constitutes a breach of the contract itself. *Story*, 791 P.2d at 775.

The Bank alleges that a significant factual dispute exists concerning whether Brown had good faith intentions to complete the sale. A reasonable inference from Erickson's testimony is that the Bank was "ready, willing, and able" to accommodate Brown's concerns and amend the inconsistent terms (i.e., conflicting assumption of mortgage clause and "due on sale" clause) to bring the closing to fruition. Brown did not raise objections, but indicated that he

12

did not wish to proceed with the transaction. Drawing inferences from these facts in a light most favorable to the Bank, we determine that the Bank has raised an issue of disputed fact as to Brown's good faith intentions.

Third, there is a genuine issue of material fact concerning the Bank's claim of promissory estoppel. The Bank asserts that, by his words and actions, Brown was estopped from raising objections to the completion of the purchase.

To establish promissory estoppel in Montana, the following elements must be present:

> (1) a promise clear and unambiguous in its terms; (2) reliance on the promise by the party to whom the promise is made; (3) reasonableness and foreseeability of the reliance; and (4) the party asserting the reliance must be injured by the reliance.

*Keesun Partners v. Ferdig Oil Co., Inc.* (1991), 249 Mont. 331, 339, 816 P.2d 417, 422.

The Bank contends that by entering into the buy-sell agreement, signing the agreement, and insisting on an early closing, Brown lead the Bank to believe he would close the transaction. Brown's actions and representations caused the Bank to incur substantial expenses in preparing the property for Brown. The Bank moved the current tenants off the property, by buying out their leasehold interest for approximately $17,000. Further, at Brown's request, the Bank removed a complex irrigation/sprinkler system at a cost of $45,000.

In a case similar to ours, the Connecticut Supreme Court held that a purchaser's obligation to perform would not be excused on

13

the basis of a failure to obtain financing on purchaser's terms when sellers had evicted tenants and had taken the property off the market in reliance upon the purchaser's promise to close. *Loda v. H.K. Sargeant & Assoc. Inc.* (Conn. 1982), 448 A.2d 812. The Bank in our case has established there is a factual dispute with regards to its claim of promissory estoppel.

Based on the record he submitted to the court, we conclude that Brown has not established an absence of factual issues with regard to his allegation that the buy-sell agreement was not binding; or that if the contract was binding, the Bank was the breaching party. The Bank has submitted evidence from the record that factually disputes Brown's two claims.

We further conclude that there are factual issues regarding the Bank's claims that Brown (1) prevented the Bank from performing the contract; (2) breached the covenant of good faith and fair dealing; (3) should be estopped from avoiding his obligation under the contract; and (4) negligently misrepresented his intentions.

The parties have offered contradictory evidence about how willing the Bank was to revise nonconforming terms to complete the real estate transaction. It is not clear whether Brown wished to abandon the contract or whether the Bank refused to tender financial terms consistent with the buy-sell agreement. Because there are contradictory facts on material issues, we hold that Summary Judgment is inappropriate.

In light of our holding above, we will not address the issue concerning the exclusion of paralegal fees raised by Brown on this appeal. The order of the District Court is reversed and remanded for resolution of the factual issues.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

I respectfully dissent. I would affirm. By virtue of the terms of the buy-sell agreement and the Bank's breach thereof, Brown is entitled to return of his $50,000 earnest money. The Bank failed to perform in accordance with the buy-sell written agreement as to a material clause. This is uncontroverted and there is no issue of fact relative to this breach.

The Bank also added material clauses to the mortgage which were not contained in the agreement, all of which was to the Bank's benefit. These clauses included a default and the balance due on death of Brown, a default and the balance due when the Bank deems itself insecure, and also giving the Bank a lien on any personal property attached to the land.

The buy-sell agreement provided as to financing as follows:

```
$1,000,000.00 payable as follows
$    50,000.00 earnest money to be applied at closing
$  200,000.00 as additional cash down payment payable on
                 or before closing
$  750,000.00 balance of the purchase price will be paid
                 at closing as follows:  First Security Bank
to carry a note mortgage over 10 years, interest rate to
be prime rate plus -0- with a cap rate of 12%, no cap on
floor, & no points.   Buyer to pay monthly payments.
Prime rate is fixed by City Bank of New York.   Said
mortgages are assumable on sale of all, or if in part,
pro rata on acreage basis.
```

At closing, the Bank breached the buy-sell agreement by presenting a mortgage containing a clause relative to sale of the property in contradiction with the wording of the buy-sell agreement. This agreement provided the mortgage was assumable by the later buyer upon sale of all, or if sale in part, pro rata on an acreage basis. The Bank's mortgage contained the "due on sale" clause:

16

DUE ON SALE - CONSENT BY LENDER. Lender may at its option, declare immediately due and payable all sums secured by this mortgage upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.

This "due on sale" clause in effect changed the wording of the agreement that the mortgage would be assumable on sale. As a matter of law and fact the Bank violated the buy-sell agreement by giving itself the option to accelerate the balance if it does not give prior written consent to the sale. The Bank has never presented the buyer with financing documents which comply with the buy-sell agreement, even though that would cure the deficiency here.

The Bank breached the buy-sell agreement and the buyer is entitled to a refund of the $50,000 earnest money and attorney fees.

_____
Justice

17