No. 98-565

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 231

DENNIS ERKER and DOREEN ERKER,

Plaintiffs, Respondents, and Cross-Appellants

v.

ROBERT L. KESTER and MARCIA M. KESTER,

Defendants, and Appellants.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Michael C. Coil, Angel Law Firm, Bozeman, Montana

For Respondents:

Donald E. White, Bozeman, Montana

_____

Submitted on Briefs: March 11, 1999

Decided: September 28, 1999

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

1. ¶Defendants and Appellants Robert L. Kester and Marcia M. Kester (Kesters) appeal the order of the Eighteenth Judicial District Court, Gallatin County, granting summary judgment to Plaintiffs and Respondents Dennis Erker and Doreen Erker (Erkers). Kesters assert that the District Court's application of the doctrine of equitable estoppel was improper and genuine issues of material fact remain in dispute concerning the conveyance of a small parcel of property between the parties. Erkers, by cross-appeal, claim they should be awarded attorney's fees under Montana's *Foy* exception.

2. ¶We affirm the District Court's order and deny Respondents' request for attorney's fees.

3. ¶In reaching the same conclusion as the District Court, but on different grounds, we address the following issues on appeal:

1. Did the filing of Certificate of Survey No. 887, pursuant to the Montana Subdivision and Platting Act, enlarge an individual parcel of land, which was the subject of the sale and purchase agreement between Kesters and Erkers, thereby requiring the delivery of the Parcel A deed?

2. Should Kesters be held responsible for payment of Erkers' attorney's fees under the *Foy* exception?

## Background Facts

1. ¶This case involves a dispute over a portion of an asphalt driveway (Parcel A) in Big Sky, Gallatin County, Montana. Like most driveways, this one leads to a house, which the record indicates is located on Lot 26, Block 3, of the Meadow Village subdivision (Lot 26). Erkers purchased the house from Kesters for approximately $310,000. The sale commenced August 21, 1990, and closed on January 2, 1991. Throughout six years of ownership, Erkers accessed the property using Parcel A.

2. ¶Erkers maintain that purchase of the house, under the August 21, 1990 sale and purchase agreement, included the entire driveway. If so, the $310,000 price included

Parcel A, a 1,614 square-foot, triangle-shaped piece of land that provides the only ingress and egress to Lot 26 from the cul-de-sac on Looking Glass Road. Kesters, on the other hand, claim that in conveying a deed to Lot 26, they never intended to convey the entire driveway; rather, the sale and purchase of this allegedly separate slice of asphalt would be negotiated later, for an amount in addition to the $310,000 purchase price of Lot 26.

3. ¶The record indicates that the entire asphalt driveway, which continuously covers Parcel A and extends into Lot 26, was installed by Kesters during the construction of the house on Lot 26. The record further shows that Erkers inspected the property prior to their purchase, and found no physical indications that any parcel was separate and distinct from Lot 26.

4. ¶The documentation of the transaction between the parties is not entirely consistent. The sale and purchase agreement, signed August 21, 1990, describes the property as "Lot 26 Block 3 (Kester House) Big Sky Meadow Village" and does not expressly mention Parcel A. An August 22, 1990 addendum to the agreement--drafted and signed by Kesters' real estate agent--refers to "the sale of Lot 26, Block 3 *plus the added contiguous tract*." (Emphasis added). The January 2, 1991 deed purports to convey:

Lot 26, Block 3 of Meadow Village, Big Sky of Montana, Inc., Second Filing, Gallatin County, Montana, according to the official plat thereof on file and of record in the office of the County Clerk and Recorder of Gallatin County, Montana.

1. ¶On April 1, 1991, approximately four months after the closing on the Kester-Erker transaction, Kesters' attorney sent a letter to Erkers' attorney indicating that Parcel A had not been conveyed by the Lot 26 deed, a fact brought to Kesters' attorney's attention by a title insurance company. The letter requested that Erkers pay "additional consideration" in exchange for the second deed. The record provides no evidence beyond mere allegations that the necessity or desire to separately sell Parcel A was, at any time prior to April 1, 1991, contemplated or communicated by either party. Additionally, Kesters admit that the issues of access to Lot 26 and the desire to separately sell Parcel A never entered discussions between them and their real estate agent, who drafted portions of the sale and purchase documents.

2. ¶This dispute simmered unresolved for five years, marked by offers, counteroffers, idle threats, and bitter rejections. In November of 1996, Erkers wished to sell the house to a third party. Rather than hold up the sale, Kesters agreed to convey Parcel

A to Erkers, who then conveyed the parcel, along with Lot 26, to their buyers as a whole--resulting in a deed that effectively and finally merged the description of the two parcels into one. As a condition of this conveyance, Erkers agreed to place $16,000 of the purchase price in escrow. Subsequently, this litigation ensued over Parcel A, to resolve who was entitled to all or some of the escrow funds.

3. ¶The record further provides a detailed history of Parcel A, which is relevant to the foregoing dispute. The reader's understanding of this history will be aided by referring to the plat map appended to this opinion.

4. ¶Legally, Parcel A did not exist until March 24, 1980, when Certificate of Survey No. 887 (COS 887) was properly filed with the Gallatin County Clerk and Recorder showing that a common boundary between two lots was relocated. The survey was conducted between October 1 and October 19 of 1979, at the behest of Lone Pine, Inc., owner of Tract D, and Roland Croghan, who had sold Lot 26 to Robert Kester. The boundary relocation essentially clipped off the northwest corner from Tract D and thereby expanded the southwest portion of Lot 26, which lies to the north of Tract D.

5. ¶The timing of the survey is relevant in that Croghan deeded Lot 26 to Robert Kester on October 6, 1979, five days after the survey had commenced. Once the survey was completed, Lone Peak, Inc. deeded Parcel A to Croghan on May 7, 1980. Croghan, in turn, deeded Parcel A to Robert Kester on May 20, 1980. Both deeds were properly recorded on May 22, 1980.

6. ¶As a result of the boundary relocation, the survey describes "LOT 26 and PARCEL A," as "[a] Tract of land" that contains 16,110 square feet and indicates the general purpose of the survey: "TO ADD 1,614 SQ. FT. TO LOT 26, BLOCK 3, MEADOW VILLAGE." The survey also provides a common metes and bounds description, with a solid line tracing the new boundary, with a dotted line indicating the former boundary line separating Lot 26 and Tract D. COS 887 also provides a separate legal description of Parcel A, including its 1,614 square-foot dimensions.

7. ¶Robert Kester claims he was unaware of the Croghan-Lone Peak, Inc. survey, the boundary relocation, and the May 20, 1980 deed from Croghan to him. The record indicates Robert Kester was not required to pay additional consideration for Parcel A. At precisely what point he, or he and his wife,[1] became aware of their ownership interest in the additional 1,614 square feet--which the record indicates provided them with their only access to Lot

26--is not clear. Records submitted by Kesters indicate they owed $108.37, plus $39.14 in delinquent taxes, on Parcel A for the 1991 tax year. The record also indicates that taxes

had been paid--by whom, it is not clear--between November 30, 1989 and November 27, 1997. In his affidavit, Robert Kester claims he began paying taxes on Parcel A sometime in 1983.

1. ¶Thus, following the filing of COS 887, one properly surveyed and legally described boundary contained one lot and one parcel, each with a separate deed and tax liability. The District Court, in granting Erkers' motion for summary judgment, determined under the theory of equitable estoppel that the whole--Lot 26 and Parcel A--was the subject of the sale and purchase contract between the parties, and that Kesters, owing to their failure to disclose the existence of Parcel A and the landlocked condition of Lot 26, were estopped from asserting any claim to the contrary. The court denied Kesters' claim to any share of the escrow funds, and further ordered that each party was responsible for their own attorney's fees. Kesters appealed, and Erkers cross-appealed.

## Standard of Review

1. ¶This Court reviews an order granting summary judgment under Rule 56, M.R.Civ. P., by utilizing the same criteria as the district court. *See Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. Summary judgment is a remedy which should be granted when there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Rule 56 (c), M.R.Civ.P. The procedure should never be substituted for trial if a material factual controversy exists. *See Payne Realty v. First Sec. Bank* (1993), 256 Mont. 19, 24, 844 P.2d 90, 93.

2. ¶The party seeking summary judgment has the burden of demonstrating a complete absence of any genuine factual issues. *See D'Agostino v. Swanson* (1990), 240 Mont. 435, 442, 784 P.2d 919, 924. This Court looks to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine the existence or nonexistence of a genuine issue of material fact. *See* Rule 56(c), M.R. Civ.P.*; Ulrigg v. Jones* (1995), 274 Mont. 215, 218-19, 907 P.2d 937, 940. Furthermore, on review, all reasonable inferences that might be drawn from the offered evidence should be drawn in favor of the party opposing summary judgment. *See Payne,* 256 Mont. at 25, 844 P.2d at 93. But where the record discloses no genuine issue as to any material fact, then the burden shifts to the party opposing the motion to present evidence of a genuine issue of fact. *See B.M. by Berger v. State* (1985), 215 Mont. 175, 179, 698 P.2d 399, 401. The party opposing

summary judgment, however, must present material and substantial evidence, rather than merely conclusory or speculative statements, to raise a genuine issue of material fact. *See B.M. by Berger*, 215 Mont. at 179, 698 P.2d at 401.

3. ¶Therefore, in order to affirm summary judgment, we must first determine that no material facts remain in dispute regarding the vesting of ownership by Erkers in both Lot 26 *and Parcel A* under the terms of the August 21, 1990 contract, and that as a matter of law Kesters were required under its terms to deliver both deeds.

## Issue 1.

Did the filing of Certificate of Survey No. 887, pursuant to the Montana Subdivision and Platting Act, enlarge an individual parcel of land, which was the subject of the sale and purchase agreement between Kesters and Erkers, thereby requiring the delivery of the Parcel A deed?

1. ¶Kesters contend that Parcel A was not part of the sale and purchase of Lot 26, that the deed conveying Lot 26 made no reference to Parcel A, and that, therefore, Parcel A was rightfully theirs to sell at a later time. Consequently, Kesters argue that some or all of the funds currently held in escrow by the trial court should go to them as additional consideration for their conveyance of Parcel A to Erkers.

2. ¶In granting Erkers' motion for summary judgment, the District Court applied the six-part-test under the doctrine of equitable estoppel and concluded that Kesters as a matter of law were estopped from denying that Parcel A was a separate tract from Lot 26 and not included as part of the August 21, 1990 Kester-Erker sale and purchase agreement. This conclusive finding turned on the determination that Kesters failed to inform Erkers of the existence of the Parcel A deed, that Kesters had, in fact, used Parcel A as their only means of ingress and egress prior to the sale, and that without Parcel A, Lot 26 was landlocked. Unaware that delivery of two deeds was necessary to complete the transaction, Erkers detrimentally relied on the omission of this essential information, and believed that the purchase price included access to the house on Lot 26.

3. ¶Pursuant to our de novo standard of review, we reach the same conclusion as the District Court, but on different grounds. Where the conclusion of the district court is correct, it is immaterial, for the purpose of affirmance on appeal, what reasons the district court gives for its conclusion. *See Geiger v. Department of Revenue* (1993), 260 Mont. 294, 298, 858 P.2d 1250, 1252 (affirming district court's constructive discharge judgment under alternative negligence theory).

4. ¶Rather than wrangle with the doctrine of equitable estoppel, we instead agree with

and follow Erkers' argument made on appeal and in their summary judgment brief--that the Montana Subdivision and Platting Act effectively resolves the issue presented. *See Elk Park Ranch, Inc. v. Park County* (1997), 282 Mont. 154, 165, 935 P.2d 1131, 1137-38 (setting out the equitable estoppel six-part test); *Ducham v. Tuma* (1994), 265 Mont. 436, 441, 877 P.2d 1002, 1006 (stating that equitable estoppel is not favored in Montana and will be sustained only upon clear and convincing evidence); and *360 Ranch Corp. v. R & D Holding* (1996), 278 Mont. 487, 493, 926 P.2d 260, 264 (recognizing the general principle that equitable jurisdiction is appropriate only in the absence of statutory or legal remedy).

5. ¶Before addressing the Subdivision and Platting Act, however, we turn our attention to one of Montana's long-standing maxims of jurisprudence, that "[o]ne who grants a thing is presumed to grant also whatever is essential to its use." Section 1-3-213, MCA. *See also Yellowstone Valley Co. v. Associated Mortgage Investors, Inc.* (1930), 88 Mont. 73, 81, 290 P. 255, 257 (stating "in accordance with natural justice and reason . . . where one sells a house . . . every right will pass to the purchaser which is necessary to the complete use and enjoyment of the property conveyed, unless expressly reserved"). In the context of this case, the presumption is that access was necessary and essential to the complete use and enjoyment by Erkers of the house and property which Kesters sold them. However, this presumption, or "assumption of fact," in accordance with § 26-1-602, MCA, and Rule 301, M.R. Evid., is "disputable," and may be controverted by other evidence.

6. ¶Moreover, because the August 21, 1990 sale and purchase agreement between Kesters and Erkers underlies the application of this presumption to this case, it is critical that we first construe the contract. In this task we are guided by several well-established principles of contract law.

7. ¶First, § 28-3-206, MCA, requires that "[i]n cases of uncertainty . . . the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." For example, if any uncertainty exists in a sale agreement or a deed for real property, it must be construed most strongly against the person who caused the uncertainty. *See Voyta v. Clonts* (1958), 134 Mont. 156, 166, 328 P.2d 655, 661 (requiring seller-plaintiffs to present clear, convincing, and satisfactory proof to overcome presumption that conveyance of real property included rights to minerals).

8. ¶Second, it is well-established that in interpreting a written instrument, the court will "not isolate certain phrases of the instrument to garner the intent of the parties, but will grasp the instrument by its four corners and in the light of the entire instrument, ascertain the paramount and guiding intent of the parties." *Rumph v.*

*Dale Edwards, Inc.* (1979), 183 Mont. 359, 368, 600 P.2d 163, 168 (holding that the overall intent expressed in written lease agreement unambiguously included option to purchase real property).

9. ¶Applying these rules to the uncontroverted facts established at the summary judgment proceedings, we conclude that it was reasonable for Erkers to presume that the entire driveway, which included Parcel A, was one of the essential benefits of their bargain with Kesters. The sale and purchase agreement, in its entirety, supports this presumption by expressly providing that the sale included "Lot 26 Block 3 (Kester House)" and the "added contiguous tract." That conveyance of both parcels was the intention of the parties is further supported by the fact that it was not until a title insurance company discovered the two-parcel anomaly that Kesters suddenly determined that Parcel A had not been part of the deal.

10. ¶Noticeably absent from Kesters' briefs or supporting documents is any mention of their sale and purchase agreement with Erkers and the addendum drafted by their own real estate agent. Nonetheless, the language of the agreement and its addendum, referring to both Lot 26 plus the added contiguous tract, must be construed against Kesters as they were the parties who were responsible for including the language in the contract. In *Voyta*, this Court concluded that any uncertainty that existed in the sale agreement and deeds from a real property transaction must be construed against the seller-plaintiffs, whose real estate agent had caused the uncertainty in drafting the documents. *See Voyta*, 134 Mont. at 166, 328 P.2d at 661.

11. ¶Also absent in the record are any facts regarding Robert Kester's Lot 26 purchase agreement with Croghan. Such details might have clarified the issue of access to the landlocked lot and the subsequent creation of Parcel A. In fact, what the record does demonstrate is that Croghan intended that Kesters have Parcel A for access to Lot 26 and that he (Croghan) created Parcel A and conveyed it to Kesters without charge for that purpose.

12. ¶In sum, we are only obliged to draw reasonable inferences in favor of Kesters from *offered* evidence. Based on the record presented and with Kesters' failure to put forth satisfactory evidence to the contrary, we conclude that Erkers' complete use and enjoyment of Lot 26 presumptively included access to that lot. And, access necessarily required the conveyance of Parcel A as part of their purchase from Kesters. *See* § 1-3-213, MCA; *Yellowstone Valley Co.*, 88 Mont. at 81, 290 P.2d at 257.

13. ¶Having determined that this presumption is applicable, we must still determine, however, whether there is evidence in the record or some other legal basis which would controvert Erkers' reliance on the presumption. In other words, in the context

of this case, is the presumption satisfactorily disputed pursuant to § 26-1-602, MCA, and Rule 301, M.R.Evid.? Did Erkers know or should they have known that the purchase of Lot 26 did not include Parcel A?

14. ¶In this regard, as buyers, Erkers are charged with constructive notice of the contents of properly recorded instruments describing the prior conveyances of Lot 26 and Parcel A. *See* § 70-21-302(1), MCA; *Tillotsen v. Frazer* (1982), 199 Mont. 342, 350, 649 P.2d 744, 749. Kesters argue, therefore, that despite their own silence or lack of knowledge on the matter, Erkers knew or should have known that Parcel A was a distinct, separate parcel from Lot 26, and was not part of the bargain. We disagree.

15. ¶Section 76-3-103(1), MCA, which is part of The Montana Subdivision and Platting Act, Title 76, Ch. 3, provides that a certificate of survey "means a drawing of a field survey prepared by a registered surveyor for the purpose of disclosing facts pertaining to boundary locations." Moreover, § 76-3-103(16), MCA, provides in relevant part:

(a) "Tract of record" means an individual parcel of land, irrespective of ownership, that can be identified by legal description, independent of any other parcel of land, using documents on file in the records of the county clerk and recorder's office.

(b) Each individual tract of record continues to be an individual parcel of land unless the owner of the parcel has joined it with other contiguous parcels by filing with the county clerk and recorder:

. . .

(ii) a certificate of survey . . . that shows that the boundaries of the original parcels have been expunged and depicts the boundaries of the larger aggregate parcel.

Finally, under § 76-3-207(1), MCA, "the following divisions of land are not subdivisions under this chapter but are subject to the surveying requirements of 76-3-401 for divisions of land not amounting to subdivisions:"

(e) divisions made for the purpose of relocating a common boundary line between a single lot within a platted subdivision and adjoining land outside a platted subdivision.

1. ¶Here, by way of COS 887, Kesters' grantor, Croghan, and Croghan's grantor, Lone Pine, Inc., relocated the common boundary between their respective parcels of land. This common boundary relocation provided the essential access to Lot 26 owned at the time by Robert Kester. Pursuant to § 76-3-103(16)(b)(ii), MCA, the filing of COS 887, unequivocally establishes "that the boundaries of the original parcels have been expunged and depicts the boundaries of the larger aggregate parcel." This larger aggregate parcel is identified as "Lot 26 and Parcel A." COS 887 also provides that the adding of Parcel A to Lot 26 was "exempt from review as a subdivision," and refers to § 76-3-207(1)(e), MCA, as the basis for this exemption.

2. ¶Accordingly, we conclude that Parcel A was not, as a matter of law, an "individual parcel of land" at the time Kesters and Erkers signed the sale and purchase agreement. Thus, the only constructive knowledge Erkers can be charged with is that the sale and purchase of Lot 26, from among the lots identified on Block 3 of Meadow Village, included all the property within the common metes and bounds description described in COS 887 as "Lot 26 and Parcel A." Likewise, any imputed knowledge of Kesters paying taxes separately on Lot 26 and Parcel A prior to closing is irrelevant; such a liability flows from the two separate deeds delivered by Croghan to Roberts Kester, and offers nothing to rebut the presumption that Parcel A was part of the bargain. For Kesters to persuade us now that summary judgment should be overturned, requires that their claimed intention to withhold Parcel A from the Lot 26 transaction be somehow derived from the record above and beyond the transaction documents themselves.

3. ¶ To this end, Kesters argue that they "did not *convey* Parcel A as described on the record to Erker when [they] *sold* Lot 26." They argue that "[t]he *deed* from Kester to Erker only described Lot 26 and did not use the metes and bounds description which includes Parcel A," and that "the *deed* conveying the real estate to [Erkers] refers to a map, that being COS 887, and states that the *sale* is for Lot 26 only." Kesters further argue, that since the "*sale*" was "by the tract" Erkers are not entitled to any amount of property that they were "shorted in the *transaction*."

4. ¶Kesters are correct that they did not convey Parcel A to Erkers on January 2, 1991. The sale and purchase agreement signed by both parties was a contract. The January 2, 1991 deed, on the other hand, conveyed title to the property described therein. *See*, *e.g.*, 23 Am.Jur.2d Deeds § 9 (1983). This is precisely the technicality discovered by the title insurance company--that the deed describing only Lot 26 was insufficient to properly convey the property subject to the contract--i.e., Lot 26 and Parcel A. *See* 77 Am.Jur.2d, *Vendor and Purchaser* § 282 (1997) (stating "[i]t is

incumbent upon the vendor to deliver possession of the premises to the vendee in accordance with the terms of the contract of sale" *and* . . . . "the vendor must produce to the purchaser a deed . . . [that] conveys the estate bargained for").

5. ¶There is nothing in the record, however, to dissuade us from our aforestated conclusions that Erkers contracted for the entire parcel that Kesters' real estate agent described as Lot 26, Block 3 *plus the added contiguous tract,* and that COS 887 describes as Lot 26 *and Parcel A.* Kesters, in fact, concede that "[a] review of the map [COS 887] shows that it . . . . contains a metes and bounds legal description *which combines Lot 26 and Parcel A,*" and "a legal description for a combination of both."

6. ¶Therefore, based on the foregoing, we determine that Kesters have failed to present any material or substantial evidence that prior to closing their transaction with Erkers, they revealed their claimed intention to reserve Parcel A from the sale and purchase of Lot 26.

1. ¶ From the record, we conclude that Kesters' obligation of performance under their purchase and sale agreement and addendum with Erkers required that Kesters either deliver one deed that properly covered both Lot 26 and Parcel A--which is precisely the sort of deed that the Erkers delivered to their buyers in 1996--or that Kesters deliver a second deed to Parcel A, as requested by the title insurance company. Under either scenario, Kesters failed to perform--that is, until 1996 when they deeded Parcel A for the purposes of Erkers' pending sale.

2. ¶We therefore hold that no genuine issues of material fact remain in the controversy over the ownership of Parcel A and the denial of Kesters' claim to any share of the escrow funds. We also hold that the sale of Lot 26 by Kesters to Erkers presumptively included access. All documentation related to the transaction supports the legal conclusion that the aggregate parcel was the subject of the purchase and sale agreement and addendum, and that Kesters failed to present any material or substantial evidence that even remotely controverts these conclusions. Accordingly, we affirm the decision of the District Court in granting summary judgment as a matter of law in favor of Erkers, albeit we do so on different legal grounds.

## Issue 2

Should Kesters be held responsible for payment of Erkers' attorney's fees under the *Foy* exception?

1. ¶Erkers request this Court to award them their attorney's fees on the basis of *Foy v. Anderson* (1978), 176 Mont. 507, 511, 580 P.2d 114, 116-17. We decline to do so.

2. ¶The longstanding rule in Montana, often referred to as the American Rule, is that absent statutory or contractual authority, attorney's fees will not be awarded to the prevailing party in a lawsuit. *See*, *e.g.*, *Tanner v. Dream Island, Inc.* (1996), 275 Mont. 414, 429, 913 P.2d 641, 650 (citing *Howell v. State* (1994), 263 Mont. 275, 285, 868 P.2d 568, 574; *Goodover v. Lindey's, Inc.* (1992), 255 Mont. 430, 445, 843 P.2d 765, 774). In the present case, neither a statutory nor a contractual basis for such an award has been demonstrated.

3. ¶Nevertheless, in rare instances a district court may award attorney's fees to make an injured party whole under its equity powers. *See Stickney v. State* (1981), 195 Mont. 415, 418, 636 P.2d 860, 862; *Holmstrom Land Co. v. Hunter* (1979), 182 Mont. 43, 45, 595 P.2d 360, 363; *Foy,* 176 Mont. at 511-12, 580 P.2d at 116-17. We have, however, distinguished *Foy* and its progeny by stating that "[t]he Foy exception has been narrowly drawn and is applicable only where the action into which the prevailing party has been forced is utterly without merit or frivolous," and "only in cases with particularly limited facts." *Goodover*, 255 Mont. at 446-447, 843 P.2d at 775-776.

4. ¶In *Foy*, for example, this Court was persuaded by the fact that the defendant was brought into litigation by the plaintiff although she was not a necessary party, had not asserted a claim, and had no intention of doing so. *See Foy*, 176 Mont. at 511-12, 580 P.2d at 117. We have also held that where a party chooses to institute a suit against others, an award of attorney's fees to the plaintiff will normally be precluded. *Goodover*, 255 Mont. at 447, 843 P.2d at 775.

5. ¶Here, while Kesters' arguments were not persuasive, we are not persuaded that Erkers were forced into an action that was utterly without merit or wholly frivolous through no fault of their own. *See Goodover*, 255 Mont at 447, 843 P.2d at 776.

6. ¶Nonetheless, Erkers also direct our attention to our statement in *Tanner,* 275 Mont. at 429, 913 P.2d at 650, that "[i]n certain instances in which bad faith or malicious behavior are involved this Court has made an equitable award of attorney fees." *See also Youderian Const., Inc. v. Hall* (1997), 285 Mont. 1, 15, 945 P.2d 909, 917 (citing *Tanner*). Notwithstanding this statement, we have never actually made or upheld such an equitable award of attorney's fees on these grounds.

7. ¶In *Tanner*, we denied the request for attorney's fees and relied on *Matter of Estate of Lindgren* (1994), 268 Mont. 96, 102, 885 P.2d 1280, 1284, as nevertheless supporting this exception. In *Lindgren*, we denied the request for attorney's fees and relied on *Goodover*, 255 Mont. at 446, 843 P.2d at 774-75, as supporting this

exception. That particular citation, however, identifies the grounds on which the *district court* awarded attorney's fees. To the contrary, we held that "Montana has *not* expressly adopted a malicious or bad faith equitable exception to the American Rule and we decline to do so at this time." *Goodover*, 255 Mont. at 448, 843 P.2d at 776 (emphasis added).

8. ¶We conclude that the facts of this case do not support broadening the narrow *Foy* exception or adopting another exception to our longstanding rule preventing the award of attorney's fees in a lawsuit absent a statutory or contractual basis for doing so. Accordingly, we hold that the District Court properly denied Erkers' request for attorney's fees.

9. ¶ Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

1. Robert conveyed Parcel A to himself and his wife, Marcia, as joint tenants in 1993.